228 So.2d 475

**BRUNDIDGE MILLING COMPANY, Inc.**

v.

**STATE of Alabama.**

**4 Div. 11.**

Court of Civil Appeals of Alabama.

Nov. 24, 1969.

Patterson & Rinehart, Montgomery, for appellant.

MacDonald Gallion, Atty. Gen., Willard W. Livingston, James R. Payne, and Philip C. Davis, Asst. Attys. Gen., for the State.

WRIGHT, Judge.

This matter was appealed from a decree of the Circuit Court of Pike County, in Equity, which upheld a final assessment of

the Alabama Department of Revenue. This assessment, dated November 18, 1968, was in the amount of $1,841.19 with interest, and was for tax years from June 1, 1965, through May 31, 1968.

For the appellee, State of Alabama, a transcript of the proceedings before the Department of Revenue was introduced in the trial court and its accuracy was undisputed.

The sole question to be considered on this appeal is whether catfish feed, as manufactured and sold by appellant, is exempt from sales tax when sold to consumers who raise catfish for commercial purposes, either as fingerlings for stocking purposes, or as "eating size." (Quotation marks supplied).

Appellant, Brundidge Milling Co., Inc., is a manufacturer and distributor of commercial feeds for livestock, poultry, catfish and perhaps other animals, fish or fowl. It began manufacturing, compounding and selling feed for catfish some twelve years ago. This business has increased with the increase of the commercial growing of catfish, until at this time the volume of production is approximately 400 tons a month.

The ingredients of this commercial catfish food are substantially the same as that for cattle, hogs and poultry and are blended in accordance with the Auburn Formula #2.

Appellant has not collected sales tax on its sale of catfish food from 1957 until the time of the assessment by the Revenue Department.

The evidence on behalf of appellant was lengthy and was given by other producers, growers and experts in their field. The Court finds the testimony interesting from an academic standpoint in relation to a new and novel enterprise. A search was made in vain for a recipe for a preparation of the finished product.

However, the evidence of appellant, though interesting, gave little aid in resolving the issue raised by this appeal of whether catfish, though grown commercially on the farm, may fall within the classifications of livestock as set out in Section 33(d) of Act No. 100, Second Special Session of the Legislature of Alabama of 1959. This Section of the sales tax statute is commonly known as an exemption section and reads as follows:

"Section 33. There are exempted from the provisions of this Act and from the computation of the amount of the tax levied, assessed or payable under this Act the following:

* * * "(d) The gross proceeds of sales of insecticides and fungicides and feed for livestock and poultry (but not including prepared food for dogs or cats)."

Appellant's four assignments of error are argued collectively and under the same proposition of law. This proposition is that "feed for livestock", as used in the above quoted statute, was intended by the enacting body, to include within its scope, feed for catfish grown on farms in accordance with the "Auburn Method."

Appellant's able counsel has argued eloquently, both orally and in brief, that the legislature intended for the term livestock in the statute to have a broad meaning; so broad as to include any animal which could be commercially grown on a farm and of a domestic or semi-domestic nature. Cases from other jurisdictions, including the Kings Bench, (Minister of Labor v. Stephens, et al. (1938); 2 K.B. 675), are cited, which bring mink and fox, raised in captivity, under the definition of livestock as used in various statutes. Appellant concedes no Alabama case has been decided on this point.

It is the contention of appellant that the legislature indicated the broadness of the term "livestock" in the Act by the addition of the last portion of this subsection as a modifier. Appellant submits that livestock would have included dogs and cats if the words "(but not including prepared food for dogs and cats)", had not removed them. We cannot agree with this conclusion. If it was the intention of the legislature to

**210**

cover everything which walked, crawled, flew or swam when raised commercially on the farm, except the reservation as to dogs and cats, it did not need to specifically separate livestock and poultry. Certainly poultry would more nearly meet the common usage of the word livestock than catfish.

The record discloses that at the time of the passage of this statute, the production of feed for catfish had only just begun, and it was not until the last few years that it has grown to any substantial proportions. It is extremely doubtful that, under the circumstances then existing in the farm grown catfish industry, the legislature was even aware of a need for assisting it by providing for tax exemptions. If such was the case it could have specifically so stated.

■ The Supreme Court of Alabama has stated " * * * courts can only learn what Legislature intended by what it has said, and have no right to stray into mazes of conjecture or search for an imaginary purpose, in construing statute * * *", Dixie Coaches v. Ramsden, 238 Ala. 285, 288, 190 So. 92, 94; Champion v. McLean, 266 Ala. 103, 95 So.2d 82.

■ In construing statutes granting exemption from taxation, the Supreme Court has expressed the rule as follows: " * * * The 'universal rule of construction is that exemptions from taxation, whether statutory or constitutional, are to be strictly construed, against the exemption and in favor of the right to tax, and that no person or property is to be exempted unless the intention to exempt such person or property clearly appears in some statute or constitutional provision.' " State v. Bridges, 246 Ala. 486, 489, 21 So.2d 316, 317, 159 A.L.R. 678.

■ It has long been the rule in this state that one seeking an exemption from taxation assumes the burden to clearly establish the right. In all cases of doubt as to legislative intention, the presumption is in favor of the taxing power. Title Guarantee Loan and Trust Co., v. Hamilton, 238 Ala. 602, 193 So. 107, 108; Curry v. Reeves, 240 Ala. 14, 15, 195 So. 428, 430.

■ We are convinced that the legislature of 1959 in its enactment of Act No. 100, Section 33(d), Second Special Session, did not intend to include within the category of livestock, as used therein, farm grown catfish. This conclusion has been strengthened by the passage of Act No. 1146, Acts of Alabama, September 13, 1969.

We cannot agree that this Act, as contended by appellant in its supplementary brief, was declaratory, expository and of retroactive effect. We believe it merely an effort to broaden the definition section to include a newly developed phase of agriculture. We would hesitate to speculate that appellant herein influenced the passage of this Act.

The question raised by appellee as to the constitutionality of Act No. 1146 not being an issue in this case and unnecessary for this decision, is not therefore considered.

Affirmed.