325 So.2d 171

**STATE of Alabama**

v.

**ALLIED PAPER INCORPORATED, a corporation.**

**Civ. 545.**

Court of Civil Appeals of Alabama.

July 30, 1975.

Rehearing Denied Aug. 27, 1975.

662

William J. Baxley, Atty. Gen., State of Alabama, Willard W. Livingston, Counsel Revenue Dept. and Asst. Atty. Gen., State of Alabama, William H. Burton, Asst. Counsel Revenue Dept. and Asst. Atty. Gen., State of Alabama, for appellant.

Adams, Gillmore & Adams, Grove Hill,
and Johnson, North, Haskell & Slaughter,
Birmingham, for appellee.

**BRADLEY, Judge.**

This appeal comes from a final decree of the Circuit Court of Clarke County wherein the court reversed and set aside a final sales tax assessment imposed by the appellant, State of Alabama, Revenue Department, against appellee, Allied Paper Incorporated, in the amount of $17,493.71. The assessment was levied on purchases of machinery that replaced old, obsolete equipment as well as new and additional machinery for use in a pulp and paper mill located in Jackson, Alabama operated by Allied Paper Incorporated (subsequently referred to as Allied) and owned by the Industrial Development Board of the City of Jackson, a public corporation organized un-

der the provisions of the Cater Act, Act No. 648, Acts of Alabama 1949, p. 991 (Title 37, Section 815 et seq., Code of Alabama 1940, as Recompiled 1958) (subsequently referred to as Board). The assessment covered the period from January 1, 1970 through March 31, 1971.

After the final assessment was imposed by the State, Allied appealed to the Circuit Court of Clarke County. The case was submitted to that court on the basis of the pleadings and a stipulation of facts entered into by the parties to the controversy with accompanying exhibits.

The stipulation shows that Allied is a Delaware corporation qualified to do business in Alabama and is engaged in the manufacture of wood pulp and paper products at a mill project in Jackson, Alabama. The Board, which is the owner of the mill project, leases it to Allied.

The mill project was built and equipped by the Board after selling bonds in the amount of $23,800,000. The income from the leasing arrangement with Allied is devoted entirely to the payment of the principal and interest due on the bonds.

After being operated for several years, it became necessary to replace certain worn out and obsolete equipment in the mill project, and to add new and additional equipment. The Board, by and through its executive secretary, M. C. Plummer, who is also the fulltime purchasing agent for Allied, ordered the equipment and machinery for installation in the mill project. The purchase orders were made by the Board to the suppliers, the suppliers issued invoices to the Board, and checks were issued to the suppliers by Allied drawn on its own account but with the following legend stamped thereon: "Paid for the benefit of Industrial Development Board of Jackson, Alabama."

It was made clear in the stipulation that all the purchases were made on credit and no purchase was handled on a cash basis.

The parties also agreed that Rule G27–916, duly adopted by the State on February 6, 1968, was in full force and effect when the sales tax was imposed on Allied by the State. The Rule is as follows:

"Rule G27–916. *Industrial Development Board.*—An industrial development board created by an incorporated municipality within the State of Alabama under the Cater Act, Chapter 17, Title 37, Sections 815–830, Code of Alabama 1940, would be exempt from sales or use tax on any tangible personal property purchased by the board, provided the purchases were made in the name of the board and the board's credit is obligated.

"An industrial development board may appoint an agent to purchase its materials, but the agent must purchase the materials in the name of the board, and the board's credit must be obligated."

By its assignments of error, the State suggests that the trial court's decree is in error for that: (1) it found the Board to be the purchaser of the equipment when in fact Allied was the real purchaser and consumer of the machinery and equipment; (2) it found that the purchases were made on the Board's credit when the Board had no funds available to pay for such purchases; (3) it suggested that the purchases of the machinery and equipment could be exempt under the provisions of Title 51, Section 786(34)(i) and (m), Code of Alabama 1940, as Recompiled 1958; and (4) it failed to find that Allied was the actual purchaser of the machinery and equipment and was thereby liable for the payment of the sales taxes and that the exemption provided for in Section 11 of the Cater Act does not apply in the instant case.

In support of its assignments of error, the State argues principally that Allied being the ultimate consumer of the machinery and equipment purchased was for tax purposes the real purchaser; that the Board was not the real purchaser for that, one, it did not have cash available to pay for the purchases of equipment and machinery, and two, Allied paid for the purchases with its own checks drawn on its own financial accounts.

To bolster its position that Allied, not the Board, was the real and effective purchaser of the machinery and equipment, the State says that Allied, after acquiring the possession of the equipment and machinery in question depreciated it on its Federal and State income tax returns as if it were the owner.

The State says that if we look through the form of the transactions, i. e., the purchase orders issued in the name of the Board and the invoices issued to the Board, to the actual, real-life transactions, we will see that Allied bought the machinery and equipment in the name of the Board (its purchasing agent was also the executive secretary of the Board) with its funds, used the machinery for its own gain, and then depreciated the equipment and machinery on its income tax returns as if it were the owner. These facts, according to the State, show that Allied was the purchaser and should have been required to pay the sales taxes due thereon.

In support of its theory, the State cites us to the case of *Rust Engineering Co. v. State,* 286 Ala. 589, 243 So.2d 695.

In the cited case, Rust Engineering had a contract with the Alabama State Docks to construct a grain elevator in Mobile, Alabama. Various items of materials were sold to Rust and delivered to the jobsite at the State Docks and Rust paid for them. An assessment for sales taxes was made against Rust by the State Revenue Department and Rust said it did not owe the taxes because it was an agent of the State Docks and in that capacity made the purchases. Rust maintained further that the State Docks, being the actual purchaser of the materials and also an agency of the State of Alabama, was exempt from the payment of the sales taxes.

The supreme court held that Rust was acting as an independent contractor and was not acting as an agent of the State Docks when it made the purchases in question; therefore Rust was held liable for the payment of the sales taxes because it was the actual purchaser. Rust had ordered the materials, received them, paid for them with its own funds in furtherance of its contract with the State Docks, and was, therefore, the ultimate consumer for sales tax purposes.

Allied replies to the State's argument by saying that the Board, being the actual purchaser of the equipment and machinery and having satisfied every requirement of Revenue Department Rule G27–916 previously quoted, is exempt from the payment of sales taxes on its purchases.

Rule G27–916 applies only to industrial development boards created under the provisions of the Cater Act and specifically exempts such boards from the payment of State sales taxes on the purchase of tangible personal property so long as the board itself makes the purchase and obligates its credit therefor. There is an additional provision in the Rule that authorizes the purchase to be made by an agent of the board provided the purchase is made in the name of the board and the board's credit is obligated.

The stipulation does, without question, provide that Mr. Plummer was the Executive Secretary of the Board, that the Board authorized him to sign the purchase orders on its behalf, that invoices for the purchases were issued to the Board, and that the purchases were made on credit. The only fact in the stipulation that requires interpretation is the one relating to whose credit has been obligated. The other facts are not in dispute.

Allied suggests that the Board's credit was obligated, whereas the State argues that it is really Allied's credit that was obligated. The trial court agreed with Allied and found that the Board's credit was obligated.

The State's principal objection to the conclusion that the Board's credit was obligated to pay for the equipment and machinery is that the Board had no funds with which to pay for the purchases, therefore, its credit could not be "obligated." The fallacy of this argument stems from the supposition that one must have ready cash to pay for purchases made on credit.

It is oftentimes the case that purchases are made on credit and the cash to pay for those purchases is obtained after the purchases are made; but the existence of such a situation does not lessen the obligation of the purchaser to pay for the goods bought.

If the obligation to pay for the purchases is not the Board's as the State so vigorously argues, who does have the obligation to pay for the purchases made in the instant case? Allied did not order the machinery and equipment to be delivered to Jackson, Alabama, but the Board did. To whom would the sellers of the equipment and machinery normally look for payment of these purchases? We cannot escape the conclusion that the Board would be the one to whom they would look for payment, since the Board, according to the evidence was the only one with whom they had dealt.

There is also another reason, we think, why the Board was the purchaser of the materials in question. In the leases entered into by Allied and the Board, there is a common provision that reads as follows:

"In any case where the Company is herein required to purchase, install and substitute in the Project any item of machinery or equipment, it may, in lieu of purchasing and installing said machinery and equipment itself, advance to the Board the funds necessary therefor, whereupon the Board will purchase and install such machinery or equipment in the Project."

Allied says it became necessary to replace obsolete and worn out machinery and equipment and to add new and additional

machinery and equipment, and under the terms of its lease with the Board, it could have advanced to the Board the necessary funds to pay for the purchases it desired to be made, and the Board would have been required to make the purchases for Allied. But, rather than advancing the funds to the Board prior to the purchases, Allied simply paid for the purchases after they were made by the Board. Practically speaking, we can perceive no real difference between the method used to pay for the purchases and the procedure authorized by the lease agreement.

■ Based on the pleadings and the facts as stipulated, we are convinced that Allied was not the purchaser of the machinery and equipment in question and therefore was not liable for the payment of sales taxes levied thereon. We also conclude that the Board was the purchaser of the machinery and equipment and, having satisfied the requirements of Rule G27–916, is exempt from the payment of sales taxes assessed thereon.

Allied also argued as another ground for the proposition that the Board, being the purchaser of the equipment and machinery in question, was exempt from the payment of sales taxes levied thereon by virtue of the fact that the Board was an instrumentality of the City of Jackson and pursuant to the provisions of Title 51, Section 786(34)(i) and (m), Code of Alabama 1940, as Recompiled 1958, was not required to pay sales taxes on the purchase of tangible personal property. Section 786(34) (i) and (m) is as follows:

"There are exempted from the provisions of this article and from the computation of the amount of the tax levied, assessed or payable under this article the following:

. . . . . .

"(i) The gross proceeds of sales of tangible personal property to the state of Alabama, to the counties within the state, and to incorporated municipalities of the state of Alabama.

. . . . . .

"(m) The gross proceeds of the sale or sales of tangible personal property to . . . all educational institutions and agencies of the state of Alabama, the counties within the state, or any incorporated municipality of the state of Alabama."

■ Section 786(34)(i) does exempt an incorporated municipality from the payment of sales taxes on the purchase of tangible personal property, but the Board is not an incorporated municipality. See *Opinion of the Justices,* 254 Ala. 506, 49 So.2d 175.

■ Subsection 34(m) exempts from sales taxes the purchase of tangible personal property by "educational institutions and agencies of . . . any incorporated municipality . . .." We conclude that the legislative intent here was to exempt educational agencies of an incorporated municipality, and the Board is not an educational agency of the City of Jackson, Alabama within the meaning of this statute. Consequently, Section 786(34)(i) and (m), *supra,* would not be available to the Board as a basis for an exemption from the payment of sales taxes on the purchase of tangible personal property.

For the reasons above stated, the decree of the trial court is affirmed.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.