372 So.2d 331 (1979)
STATE of Alabama
v.
BALL-CO CONTRACTORS, INC.
Civ. 1715.
Court of Civil Appeals of Alabama.
March 28, 1979.
Rehearing Denied May 2, 1979.
*332 William J. Baxley, Atty. Gen., Herbert I. Burson, Jr., Chief Counsel, Dept. of Revenue, and Asst. Atty. Gen., John J. Breckenridge, Asst. Counsel, Dept. of Revenue, and Asst. Atty. Gen., State of Alabama, for appellant.
Robert H. Allen, Mobile, for appellee.
BRADLEY, Judge.
The State of Alabama, Department of Revenue [hereinafter the State] entered an assessment for use tax against Ball-Co Contractors, Inc. [hereinafter Ball-Co] in the amount of $1,711.03 for purchases made between October 1, 1974 and December 31, 1976. Ball-Co filed a petition for redetermination which was denied. The use tax assessment was made final and interest of $260.72 was added to the original assessment of $1,711.03. Ball-Co then appealed the assessment to the Circuit Court of Baldwin County under Code of Alabama 1975, § 40-2-22. The circuit court set aside the assessment and taxed the State with costs. It is from this order that the State appeals.
On December 20, 1974 Ball-Co entered into a contract with the Public Building Authority of the City of Prichard. Ball-Co served as general contractor for the construction of the Prichard Municipal Complex. Some $41,945.01 of purchases which were assessed for use tax was made on purchase orders prepared for and bearing the name of the Public Building Authority. The purchases were initially paid for with checks issued by Ball-Co. Ball-Co completed the construction contract and was paid all sums due under the contract and under all change orders issued pursuant to the contract. Ball-Co was never appointed purchasing agent for the Public Building Authority.
The issue to be resolved in this case is whether the purchases made are exempt from state use taxation. This case was decided below on the pleadings and a stipulation of the facts agreed upon by the parties; therefore, we review this case without the traditional presumption of correctness afforded cases where an oral hearing is conducted. We must consider the evidence anew and render a judgment in light of that evidence and applicable legal principles. Henderson v. Nationwide Life Insurance Co., 56 Ala.App. 329, 321 So.2d 671, cert. den. 295 Ala. 405, 321 So.2d 675 (1975); see 2A Ala. Dig. Appeal & Error 931(1).
The Code of Alabama 1975, § 11-56-21 provides as follows:
Each project and the income from all leases made with respect thereto, the bonds issued by the corporation and the income therefrom and all lease agreements and indentures made pursuant to the provisions of this chapter shall be exempt from all taxation in the state. [Emphasis added.]
The word "project" is defined in Code of Alabama 1975, § 11-56-1(10) as "[a] building or buildings located or to be located in the municipality," and § 11-56-8 lists the powers of public building authorities. Section 11-56-8(5) says the corporation has the power "[t]o acquire, whether by purchase, gift, lease, devise or otherwise property of every description which the board may deem necessary to the ... construction... of a project." Because Code of Alabama 1975, § 11-56-2 suggests that the chapter concerning public building authorities be liberally construed in conformity with the intent of the legislature, we find that "project" as defined and existing *333 under the exemption section for public building authorities includes purchases necessary for the construction of projects.
We would also note that § 11-56-21 is an exemption statute and should be construed strictly against the taxpayer and favorably for the State. State v. Hunt Oil Co., 49 Ala.App. 445, 273 So.2d 207, cert. den. 290 Ala. 371, 273 So.2d 214 (1973). Furthermore, one seeking an exemption from taxation has the burden of clearly establishing such right. Brundidge Milling Co. v. State, 45 Ala.App. 208, 228 So.2d 475 (1969).
Ball-Co states that in 1968 the State Department of Revenue promulgated Rule G27-916 which established guidelines for determining the tax exempt status of purchases made by industrial development boards. Although Ball-Co recognizes that a public building authority is not an industrial development board, it asserts that the guidelines laid down in Rule G27-916 can be applied to a public building authority to determine whether purchases allegedly made by it are tax exempt.
In answer to Ball-Co's assertions, the State says that Rule G27-916 does not apply to public building authorities. We agree. In State v. Allied Paper Incorporated, 56 Ala.App. 661, 325 So.2d 171, cert. den. 295 Ala. 420, 325 So.2d 176 (1976), we said:
Rule G27-916 applies only to industrial development boards created under the provisions of the Cater Act and specifically exempts such boards from the payment of State sales taxes on the purchase of tangible personal property so long as the board itself makes the purchase and obligates its credit therefor. There is an additional provision in the Rule that authorizes the purchase to be made by an agent of the board provided the purchase is made in the name of the board and the board's credit is obligated. [Emphasis added.]
Assuming arguendo, however, that Rule G27-916 does apply to the present case, appellee would not benefit from such application because the stipulated facts show that Ball-Co paid for the purchases with its own funds, therefore one of the criteria laid down in the rule for exemption is not met and Ball-Co would not be entitled to an exemption.
Because there is no Revenue Department rule similar to Rule G27-916 applicable to public building authorities we must devise criteria to determine the applicability of § 11-56-21 to the facts of this case.
As suggested by the Department, it would appear that for the purchases in question to be exempt from the use tax, it would be necessary for the building authority itself to make the purchases and pay for them or make the purchases through an authorized agent. In the case at bar the parties stipulated that the purchases were not made by a purchasing agent of the Authority. Therefore, the remaining question is whether the evidence supports the conclusion that the Building Authority made the purchases and paid for them.
The parties stipulated that the purchases on which the use tax was assessed were made "on the purchase orders prepared for and bearing the name of the Public Building Authority of the City of Prichard [emphasis added]" and that the purchases were "initially paid with checks issued by Ball-Co Contractors, Inc."
A careful analysis of the stipulated facts as set out above leads us to the conclusion that the purchase orders do bear the name of the Building Authority but were not prepared by the Authority, for the stipulated facts clearly state that the purchase orders were prepared for the Building Authority.
When this fact is coupled with the stipulation that Ball-Co initially paid for the purchases, it would not be unreasonable to conclude that Ball-Co made the purchases on invoice forms bearing the name of the Authority and then paid for those purchases with its funds. Such a conclusion is even more plausible when it is remembered that the parties stipulated that Ball-Co was not the purchasing agent for the Authority.
*334 The State argues that the trial court erred as a matter of law in concluding that the appellant was not liable for the tax because the Building Authority had ultimately reimbursed Ball-Co for the purchases. The State says the issue is not who ultimately pays for the purchases but who initially bought and paid for the purchases. The State relies upon cases such as State v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3 (1941), dealing with contracts between the federal government and contractors for the proposition that the ultimate shifting of the economic burden to the public building authority by reimbursement would not relieve Ball-Co from the use tax. We would point out that in State v. King & Boozer, there was a cost-plus contract between the parties. In addition, it was shown that the parties contemplated that the government would reimburse the contractors for state and local taxes; the contractors were to make purchases in their own names and obligate their own credit; and that the government was not bound by the contractors' purchase contracts. We have no contract in evidence in this case. All we know from the record of this case is that Ball-Co was the general contractor for the project and that it was paid all moneys due under the contract. Nevertheless, the principle that the ultimate shifting of the economic burden to the tax exempt entity will not relieve a contractor from use tax can support the conclusion that the legislature never envisioned that § 11-56-21's exemption would apply where a contractor for the authority buys and pays for the goods initially and is later reimbursed.
We are, therefore, of the opinion that where purchases are not made and paid for by the Authority, no exemption from use tax could be given; the general contractor on the Authority building project who made and paid for the purchases would be liable for the tax as assessed by the State.
The judgment of the trial court is reversed and the case is remanded for entry of judgment in accordance with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
WRIGHT, P. J., concurs in the result.
HOLMES, J., dissents.
HOLMES, Judge, dissenting:
I respectfully dissent.
The stipulated facts in this case as shown by the record are as follows:
1. On September 21, 1977, the State of Alabama, Department of Revenue, asserted a use tax of $1,711.03 against Ball-Co Contractors, Inc. for purchases made between October 1, 1974 and December 31, 1976.
2. After a Petition for Redetermination filed by Ball-Co Contractors, Inc. was denied, the same use tax assessment was made final on January 13, 1978 in the amount of $1,711.03 plus interest of $260.72 for a total of $1,971.75.
3. After the final assessment as made and entered on the records of the Department of Revenue, Ball-Co Contractors, Inc. filed this timely appeal.
4. On December 20, 1974, Ball-Co Contractors, Inc. and The Public Building Authority of The City of Prichard entered into a contract by which Ball-Co Contractors, Inc. served as the general contractor for the construction of the Prichard Municipal Complex.
5. Ball-Co Contractors, Inc. was not appointed purchasing agent for The Public Building Authority of the City of Prichard, and does not maintain it was ever appointed purchasing agent for the Public Building Authority.
6. The Public Building Authority of the City of Prichard is a public building authority organized under Code of Alabama 1940 (Recompiled 1958), Title 37, Chapter 18 (now Code of Alabama 1975, Title 11, Chapter 56), and its projects and income are exempt from all state taxation.
7. Of the purchases against which the use tax assessment was made, $41,945.01 were made on purchase orders prepared for and bearing the name of The Public Building Authority of The City of Prichard.

*335 8. Of the purchases against which the use tax assessment was made, $41,945.01 were initially paid with checks issued by Ball-Co Contractors, Inc.
9. Ball-Co Contractors, Inc. completed the contract with The Public Building Authority of The City of Prichard and was paid all sums due under that contract and under all change orders issued pursuant to that contract.
The statute as quoted in the majority opinion, to me, clearly states that each project of a public building authority shall be exempt from taxation. The facts as shown above reveal, at least to me, that this is a project of the building authority. The project is owned by the public building authority. The purchase of material and equipment used in the project was made on purchase orders issued by the public building authority. They were paid initially by the contractor. All sums due under the contract were then paid by the public building authority to the contractor.
The facts of this case are precisely what the statute envisions to be exempt. I cannot see how the fact that the contractor initially paid for the items makes the statute inoperative.
Put another way, the majority opinion is a narrow construction of the statute which was not intended by the legislature.
I would affirm the judgment of the trial court.