HOLMES, Judge.
Champion International Corporation (hereinafter Champion) appeals from an order of the Circuit Court of Montgomery County upholding final sales and use tax assessments imposed by the State of Alabama Department of Revenue.
These assessments total $542,437.08 and involve purchases of equipment to be used in a paper and pulp mill operated by Champion.
The dispositive issue is whether the purchases are exempt from sales and use taxation as purchases made by the Industrial Development Board of the Town of Court-land (the Board) with its own funds.
This case was tried upon the pleadings and a stipulation of facts entered into by the parties. We therefore review this case without any presumption of correctness we afford when an ore tenus hearing is conducted. It thus becomes our task to consider the evidence anew and to render a judgment in light of that evidence and applicable legal principles. State v. Ball-Co Contractors, Inc., Ala.Civ.App., 372 So.2d 331, cert. denied, Ala., 372 So.2d 335 (1979).
The stipulation of the parties reveals the following: Champion operates a paper and pulp mill near Courtland, Alabama. The land on which it is situated, the buildings, and the mill equipment are owned by the Board and leased to Champion. The Board is a public corporation organized under §§ 11-54-80 et seq., Code of Ala.1975.
This article, known as the Cater Act, authorizes citizens of municipalities to organize nonprofit public corporations for the purpose of promoting trade by inducing industry to locate in Alabama. Such corporations, or industrial development boards, are allowed to finance acquisitions of property by issuing bonds payable solely from revenues derived from the lease or sale of these facilities. The legislature has expressly mandated that the act be liberally construed in conformity with its avowed intention of aiding in the promotion of industry. § ll-54-81(b), Code of Ala.1975.
The mill project in this instance was to be built and equipped by the Board after it authorized and issued $125,000,000 of its revenue bonds. A construction fund was set up, and a trustee authorized to expend monies in accordance with the provisions of the lease with Champion.
The proceeds of the $125,000,000 bond issue were expended prior to October 10, 1974. After this date, all money in the construction fund was deposited by Champion as called for in one of the lease provisions.
The lease, besides requiring Champion to make such deposits, also allowed Champion to place money directly into the fund for disbursement by the trustee to cover purchases. There was an alternative provision wherein Champion could pay costs itself in the form of advances. Champion would *930 then be reimbursed for these expenditures from the fund.
Champion was the duly appointed purchasing agent for the Board. All purchases pertinent to this appeal were made by the Board and in its name through Champion pursuant to purchase orders. As provided, Champion would pay the vendors and then be reimbursed by the trustee with funds Champion had deposited. Title was taken in and remains in the name of the Board. The Board’s credit was obligated for all purchases.
The Board, pursuant to the Cater Act, is afforded certain exemptions from taxation.
Section ll-54r-96, Code of Ala.1975, provides:
The industrial development board and all properties at any time owned by it and the income therefrom and all bonds issued by it and the income therefrom shall be exempt from all taxation in the state of Alabama.
In December of 1967, Champion wrote the State Department of Revenue requesting a determination of whether purchases made by it as purchasing agent would enjoy tax exempt status. It was explained that reimbursement would come from the trustee through the construction fund.
The request stated that such a procedure was needed because the processing of payments on purchase invoices by the trustee (Chase Manhattan Bank in New York) would be unwieldly; time consuming and costly. It was feared that cash discounts would be lost if Champion could not make prompt payments directly to vendors.
By letter of January 15, 1968, the Sales Tax Division of the Department of Revenue advised Champion that purchases made by the Board through Champion would not lose their tax exemption even if Champion paid the vendors directly. However, the State required that Champion be reimbursed from the construction fund, that the property be bought in and remain in the name of the Board, and that the Board’s credit be obligated.
In February of 1968, the Department of Revenue issued its Rule G27-916 which made this policy official and specifically exempted from sales and use tax the tangible personal property purchased by any industrial development board, provided the purchase was made in the name of the board and the board’s credit was obligated. The rule also allowed the appointment of a purchasing agent so long as the agent made its purchases in the name of the board and the board’s credit was obligated.
However, on October 10,1974, the department amended this regulation. Rule G27— 916, as amended, provides:
An industrial development board created by an incorporated municipality within the State of Alabama under the Cater Act, Chapter 17, Title 37, Sections 815-830, Code of Alabama of 1940, would be exempt from sales or use tax on any tangible personal property purchased by the board, provided the purchases are made in the name of the board, the board’s credit is obligated, and paid for with funds belonging to the board. An industrial development board may appoint an agent to purchase its materials, but the agent must purchase the materials in the name of the board, the board’s credit must be obligated, and paid for with funds belonging to the board. (Emphasis indicates the words added by the amendment.)
As indicated, Champion continued to make purchases as agent of the Board and then sought reimbursement. The monies for these reimbursements came from Champion’s own contributions to the now exhausted construction fund.
The State assessed the appealed from taxes, claiming that the purchases were being made with Champion’s funds and not those of the Board in violation of the amended Rule G27-916. The learned and distinguished trial judge agreed, stressing in his final decree that the reimbursements came from money Champion itself had deposited into the fund.
At the outset, we acknowledge that § 11-54-96, which is contained within *931 the Cater Act, is an exemption statute. As such, it should be construed strictly against the taxpayer and favorably for the State. State v. Hunt Oil Co., 49 Ala.App. 445, 273 So.2d 207 cert. den., 290 Ala. 371, 273 So.2d 214 (1973). Likewise, the taxpayer bears the burden of proving it is entitled to a claimed exemption. Brundidge Milling Co. v. State, 45 Ala.App. 208, 228 So.2d 475 (1969).
However, as we have indicated, the legislature has seen fit to direct that the Cater Act be afforded a liberal construction. We accommodate these facially contradictory rules of review by construing “funds of the board” to include monies placed in a construction fund such as this by the lessee and then looking to see if Champion has met its burden of proof.
We find that it has and we reverse, deciding that in this instance the purchases were indeed made with funds belonging to the Board. In reaching this determination we make reference to a memorandum of the Department of Revenue dated February 9, 1976, and made a part of the record. We do so because this memorandum, although not compelling authority, is beneficial in illustrating what constitutes “funds belonging to the board” for purposes of amended Rule G27-916.
Basically, the Department therein takes the position that if the lessee deposits money in the established and authorized bank account of the Board, then the funds so deposited become funds of the Board. It is not required that the Board and the lessee have entered into a loan agreement. Neither need there be any mention of repayment.
It is clear to this court that this requirement was met and we hereby adopt this test as a proper one in a case such as this.
Indeed, the State concedes that there would have been no taxable transaction had the money been deposited into the fund so that the trustee could directly disperse it to the vendors. We see no practical distinction between such a method of payment and that employed here. For purposes of the exemption, the end result in both situations is the same. When Champion placed the money in the fund it became the money of the Board. Champion advanced the money to the Board when it acted as agent and paid the vendors for property bought for the Board and in its name. It received Board funds as reimbursement.
To find that Rule G27-916 was not followed would necessitate stopping this complicated series of transactions in midstream and looking to one isolated incident as opposed to the end result wherein Board funds ultimately paid for the purchases. We feel that the memorandum referred to contemplates this very situation where it might become necessary for a lessee to deposit money in the Board’s account so that such a mutually beneficial enterprise might better prosper. Thus, it is provided, and we rule, that the funds so deposited become those of the Board, so that necessary purchases might be consummated within the other provisions of Rule G27-916.
We would be remiss if we did not acknowledge the soundness of the State’s arguments in justifying the amendment to Rule G27 — 916. We are told that prior to the amendment a lessee could theoretically purchase equipment with its own funds so long as it was invoiced to an industrial development board. It was possible the board might never even become aware of the purchase. It is obvious the drafters of the Cater Act did not intend to sanction such a patent evasion of our tax laws.
It is equally obvious no such abuse is before us today. In a case such as this, reimbursement and the ensuing tax exemption can come only if the trustee of a board-maintained account approves the purchase and the expending of board funds.
Indeed, if Champion’s unchallenged assertions are correct, direct purchases allow it to capitalize on cash discounts that would otherwise be lost. To tax a lessee such as Champion on these facts would be to penalize it for effecting a savings ultimately realized by the Board. Such a result would be blatantly contrary to the provisions of the Cater Act.
*932 In so concluding, we are in accord with our decision in State v. Allied Paper Incorporated, 56 Ala.App. 661, 325 So.2d 171 (1975), cert. den., 295 Ala. 420, 325 So.2d 176 (1976). There, we allowed the exemption because all the provisions of Rule G27-916 were met. Here, for the reasons stated, all the provisions of the amended rule were met. It follows that the exemption afforded such boards when they act as purchaser should have been allowed here as it was in that case.
This case is to be distinguished from our recent decision in State v. Ball-Co Contractors, Inc., supra. There, we were faced with a claimed exemption under § 11-56-21, Code of Ala.1975. This section exempts from state use taxation all projects of public building authorities as opposed to those of industrial development boards. There is no similar Revenue Department regulation for such entities and this court refused to apply Rule G27 — 916 to them. We there decided this rule applies only to industrial development boards created under the Cater Act.
We thus were forced to devise our own criteria in Ball-Co, and we held that purchases made by a contractor who was not a purchasing agent, with its own funds, were not exempt even if the contractor was later reimbursed. As there was no agency relationship, we concluded the funds used were those of the contractor, not the Authority. In the instant case, the crucial agency was specifically created and Champion was authorized to act for the Board in making purchases.
Furthermore, we noted in Ball-Co that the purchase orders were not prepared by the Building Authority but were prepared for it. We noted the contractor’s own funds were used. We noted we had no contract before us indicating in whose name the purchases were made. Nor did we have any evidence as to whose credit was obligated.
We do have these factors before us in this case as well as the objective criteria afforded by Rule G27-916. For these reasons, we reverse and remand this case with instructions to the trial court to find the assessments were invalid as these were exempt purchases by the Board.
REVERSED AND REMANDED WITH INSTRUCTIONS
WRIGHT, P. J., and BRADLEY, J., concur.