405 So.2d 932 (1980)
Ex parte State of Alabama.
(Re: CHAMPION INTERNATIONAL CORPORATION
v.
STATE of Alabama).
79-183.
Supreme Court of Alabama.
August 22, 1980.
Rehearing Denied October 10, 1980 and January 9, 1981.

*933 ON REHEARING
PER CURIAM.
The original opinion in this cause is withdrawn and the following is substituted therefor.[1]
*934 The single issue dispositive of this case is whether equipment purchases made for use by the taxpayer (Champion International) were paid for with funds belonging to the Industrial Development Board of the Town of Courtland.
The trial court determined that the equipment purchases were paid for with checks drawn and made payable on Champion's account, and were not paid for with funds belonging to the Board. The Court of Civil Appeals, 405 So.2d 928, reversed the judgment of the trial court, "... deciding that in this instance the purchases were indeed made with funds belonging to the Board." We reverse.
The Court of Civil Appeals correctly holds that the tax exemption statute here involved should be construed strictly against the taxpayer and favorably for the State, and that the taxpayer has the burden of proving its entitlement to the exemption.
The distinguished judges of that court are also correct in stating that the provisions of the Cater Act are to be liberally construed to effect its stated intention of promoting industrial development; they candidly admit the soundness of the State's argument that unless the purchases of equipment were required to be paid for by the Board, that the Board might never become aware of some purchases, and that "[i]t is obvious the drafters of the Cater Act did not intend to sanction such a patent evasion of our tax laws." Nevertheless, the learned judges concluded:
"It is equally obvious no such abuse is before us today. In a case such as this, reimbursement and the ensuing tax exemption can come only if the trustee of a board-maintained account approves the purchase and the expending of board funds.
"Indeed, if Champion's unchallenged assertions are correct, direct purchases allow it to capitalize on cash discounts that would otherwise be lost. To tax a lessee such as Champion on these facts would be to penalize it for effecting a savings ultimately realized by the Board. Such a result would be blatantly contrary to the provisions of the Cater Act.
"In so concluding, we are in accord with our decision in State v. Allied Paper Incorporated, 56 Ala.App. 661, 325 So.2d 171 (1975), cert. den., 295 Ala. 420, 325 So.2d 176 (1976). There, we allowed the *935 exemption because all the provisions of Rule G27-916 were met. Here, for the reasons stated, all the provisions of the amended rule were met. It follows that the exemption afforded such boards when they act as purchaser should have been allowed here as it was in that case."
The tax exemption provision of the Cater Act provides:
"The industrial development board and all properties at any time owned by it and the income therefrom and all bonds issued by it and the income therefrom shall be exempt from all taxation in the state of Alabama."
This statutory provision does not specifically mention sales and use taxes, but the Department of Revenue, through the issuance of Rule G27-916, has interpreted the tax exemption provision to apply to sales and use taxes on purchases by industrial development boards, provided certain conditions are met. In State v. Allied Paper, Inc., 56 Ala.App. 661, 325 So.2d 171, cert. den., 295 Ala. 420, 325 So.2d 176 (1975), the Court of Civil Appeals held that Allied had satisfied every requirement of Rule G27-916 then in effectthat is, that the purchases were by the Board and were made in the name of the Board and the Board's credit was obligated. The State, in this case, concedes that the purchases were made in the name of the Board, and that the Board's credit was obligated; nevertheless, the State contends that the additional requirement, by Amended Rule G27-916, that the property was "paid for with funds belonging to the Board," was not met and, therefore, the exemption does not apply. The trial judge agreed with the State's position, holding:
"The transactions on which the Department of Revenue has determined Champion is liable for the taxes here involved, are those instances wherein Champion paid vendors of tangible personal property used in the project with checks drawn by Champion and made payable on Champion's account. As such Champion did not comply with Rule G27-916, as amended, when it paid for the purchases which are the subjects of the present assessments with checks drawn on Champion's account. In order for Champion to have complied with Rule G27-916, as amended, the purchases must have been paid for with funds belonging to the Board. Since the purchases were paid for with checks drawn and made payable on Champion's account, this did not constitute payment with funds belonging to the Board. The fact that Champion later deposited monies in the Construction Fund and applied to the trustee for reimbursement did not cure this fatal defect. The fact is the purchases were not paid for with funds belonging to the Board but were paid for with funds belonging to Champion."
Who was the purchaser here? That is a crucial question because the sales and use taxes are levied upon the purchaser. We think the trial court was correct.
This Court, by refusing to review the decision of Allied, should not be understood as having approved, for tax exempt status, every purchase made in the name of an industrial development board. The opportunity for tax avoidance would be rampant if this Court authorized such a practice. We do not think the framers of the Cater Act intended such a practice.
The Cater Act, by granting power to industrial development boards to borrow money, mentions specifically only the authority of a board "To issue its bonds for the purpose of carrying out any of its powers," [§ 11-54-87(a)(7)], and "[to] ... borrow money for temporary use for any of its corporate purposes ..." [§ 11-54-91(a)]. It appears that the framers of the Cater Act envisioned that funding for building and equipping its facilities would be through the issuance of bonds and by temporary borrowing. The Department of Revenue, which is charged with the administration of the taxing statutes, provides another alternative for funding purchases.
It is apparent that the department will consider an industrial development board to be the "purchaser" when the requirements *936 of its rules are met, even though the funds used for the purchase were not borrowed by the board, but were deposited with the board by the board's lessee. We do not hold that the Department of Revenue could not adopt a rule to permit such a practice; we do hold, as did the trial judge, that under the facts of this case, the Industrial Development Board was not the "purchaser" because the purchases were not paid for with funds of the Board.
REVERSED AND REMANDED.
MADDOX, FAULKNER, ALMON and EMBRY, JJ., and MERRILL, Retired Judge, concur.
JONES, J., concurs specially.
BLOODWORTH, SHORES and BEATTY, JJ., dissent.
TORBERT, C. J., not sitting.
JONES, Justice (concurring specially on rehearing):
Upon further study of the record, including the stipulation of facts submitted to the trial Court, I have changed my view of this case. I am now of the opinion that the rationale expressed in my dissenting opinion in State v. Allied Paper, Inc., 56 Ala. App. 661, 325 So.2d 117, cert. den. 295 Ala. 420, 325 So.2d 176 (1975), is equally applicable here. Initially, I felt that the facts of the two cases were sufficiently distinguishable to require different results. I now believe that the facts of the instant case are even stronger than those in Allied Paper in support of the State's position.

ON APPLICATION FOR SECOND REHEARING
Champion argues in its application for rehearing that this Court, in determining who was the "purchaser," has ignored a stipulation made between the parties, namely stipulation # 10, which reads as follows:
"The construction of the Project and purchase and installation of the Leased Equipment commenced in 1968 and continued through the periods here involved. The Board duly appointed Champion as its purchasing agent by an agency agreement with Champion dated as of February 1, 1973, a copy of which is attached hereto as Exhibit 8. The Board also duly appointed Brown & Root, Inc. as its purchasing agent by an agency agreement dated as of February 1, 1973, a copy of which is attached hereto as Exhibit 9. All purchases were made by the Board and in its name through one of its duly authorized purchasing agents pursuant to purchase orders in the form attached as Exhibit 10. Title was taken in and remains in the name of the Board. The Board's credit was obligated for all purchases. All purchases were invoiced by the vendors to and in the name of the Board in the form set forth as Exhibit 11. Champion made advances of the moneys necessary to pay the invoices for such purchases. Champion thereafter submitted to the Trustee monthly requests approved by the Board for reimbursement from the Construction Fund for such advances in the form attached hereto as Exhibit 12. The Trustee paid to Champion from the Construction Fund the amounts necessary to reimburse Champion for such advances pursuant to Section 4.3 of the Lease."
Champion asserts that Stipulation # 10 is dispositive of the issue which this Court described as the single dispositive issue, that is, who actually made the purchases in question.
Stipulation # 10 does state that the purchases were made by the Industrial Development Board of the Town of Courtland and that the Board's credit was obligated. This Court, on original deliverance, was aware of that stipulation. We said:
"The State, in this case, concedes that the purchases were made in the name of the Board, and that the Board's credit was obligated; nevertheless, the State contends that the additional requirement, by Amended Rule G27-916, that the property was `paid for with funds belonging to the Board,' was not met and, therefore, the exemption does not apply."
*937 We realize that facts stipulated by the parties are to be taken as true by the Court, Benedict v. Little, 288 Ala. 638, 264 So.2d 491 (1972), and Harper v. Talladega County, 279 Ala. 365, 185 So.2d 388 (1966), and Stipulation # 10, standing alone, and in another factual setting, would control. As we stated in the original opinion, the dispositive issue in this case was a determination of who the "purchaser" was. That was the ultimate fact to be determined. Stipulation # 10 is of the type which may be properly characterized as a stipulation of a conclusion in this factual context. Stipulations of conclusions which are contrary to the facts may properly be disregarded by the reviewing court. Commissioner of Internal Revenue v. Cummings, 77 F.2d 670 (5th Cir. 1935).
The taxpayer, on rehearing, states that "[t]ax avoidance, as opposed to evasion is not improper or illegal." We agree, and this case comes immeasurably close to the category of legal tax avoidance. We recognized all those arguments on original deliverance. We decided this case after an examination of a totality of the facts, and after a thorough examination of the intent of the legislature concerning exemption from taxation of industrial development boards.
The Department of Revenue, in its administration of the tax laws, in the past has authorized a scheme of tax avoidance in cases similar to this one. Rule G27-916 prior to its amendment was consistent with the prevailing law that purchases made by an industrial development board were exempt from taxation if they were made in the name of the board and the board's credit was obligated. The department, however, after the State v. Allied Paper, Inc., 56 Ala.App. 661, 325 So.2d 171, cert. den. 295 Ala. 420, 325 So.2d 176 (1975), experience, changed its administrative practice by amending its rule to add a requirement that such purchases must be paid for with funds belonging to the board. The trial court found that this requirement was not met. We determined that the purchases were not paid for with funds belonging to the Board.
We have carefully examined the taxpayer's additional arguments which it makes on rehearing, but we are still convinced that under Alabama law, these purchases were not tax exempt; the Industrial Development Board of the Town of Courtland was not the "purchaser."
OPINION EXTENDED, APPLICATION FOR REHEARING OVERRULED.
MADDOX, FAULKNER, JONES, ALMON and EMBRY, JJ., and MERRILL, Retired Judge, concur.
SHORES and BEATTY, JJ., dissent.
TORBERT, C. J., not sitting.
NOTES
[1] The original opinion read:

"BEATTY, Justice.
"The decision of the Court of Civil Appeals is affirmed.
"AFFIRMED.
"Torbert, C. J., Bloodworth, Jones and Shores, JJ., concur.
"Maddox, Faulkner, Almon and Embry, JJ., dissent."
On June 30, 1980, the Court entered the following order:
"ORDER
"This cause has been placed on rehearing by the Court.
"It appears that Chief Justice Torbert recused himself from oral argument of this cause. His name is accordingly withdrawn from the concurrences. It is ordered that further proceedings be had in this cause pursuant to Section 6.10 of Amendment No. 328 of the Constitution of Alabama which authorizes the Chief Justice to assign appellate justices and judges to any appellate court for temporary service and trial judges, supernumerary justices and judges, and retired trial judges and retired appellate judges for temporary service in any court; and also pursuant to § 12-2-5, Code 1975, which provides that in the event of the inability of the chief justice to perform any duty or function required by law or rule, such duty or function may be performed by the senior associate justice available in the seat of government, provided he is requested to do so by the chief justice.
"The Chief Justice being disqualified in his opinion to make an assignment of a judge for temporary service in this cause, the Chief Justice requests Associate Justice Hugh Maddox, the Senior Associate Justice available in the seat of government to assign a judge for temporary service in this case."
On July 2, 1980, the Honorable Hugh Maddox, Senior Associate Justice on duty, entered the following order:
"ORDER
"The Chief Justice being disqualified in his opinion to make an assignment of a judge for temporary service in this cause, the Chief Justice requests me as the Senior Associate Justice available in the seat of government to assign a judge for temporary service in this cause.
"There being a need for an additional judge to perform duties in this case, I, Hugh Maddox, Senior Associate Justice now on duty in the Supreme Court, pursuant to the authority contained in the provisions of Section 6.10 of the Judicial Article (Constitutional Amendment 328) and § 12-2-5, Code 1975, do hereby assign Honorable Pelham J. Merrill, a retired justice of the Supreme Court of Alabama, for temporary service on the Supreme Court of Alabama in this cause with full and complete authority as if he were an active justice of the Supreme Court of Alabama until the determination of this case."