BRADLEY, Judge.
This is a tax case.
W. G. Mack is the owner of an amusement machine business. The present case arises out of an audit conducted by the State of Alabama Department of Revenue (hereafter Department). As a result of this audit, the Department concluded that Mack *801 had failed to properly report his gross receipts, and thus he was assessed with additional sales taxes for the period September 1, 1976 through August 31, 1979. In addition, the Department found that Mack had failed to purchase the necessary number of state and county privilege licenses for the number of amusement machines which he was operating during the years 1976 through 1979.
On October 16, 1979 Mack executed a waiver of the statute of limitations for the month of September 1976. In November 1979 the Department began demanding additional taxes from Mack. Mack appealed the eleven final assessments of additional sales taxes and privilege licenses to the Circuit Court of Covington County.
The parties to this appeal filed briefs on all eleven cases in the trial court. The court sitting without a jury also heard oral testimony on the issues involved in these cases. On July 27, 1981 the trial court rendered a judgment in favor of Mack in all eleven cases, finding that he owed no additional sales tax, interest or penalty. The State filed its notice of appeal on September 8, 1981.
A substantial amount of evidence was adduced at trial. The first witness was Mr. Louis Butt, a revenue examiner. He was the one who conducted the Department’s audit of Mack.
The testimony indicated that Mack placed several different types of amusement machines including pool tables, electronic games, cigarette machines, and other vending machines at numerous locations throughout southern Alabama and also in Florida. Normally Mack would split the proceeds from these machines fifty-fifty with the person in whose store the machine was placed. Part of the dispute in the present case arises from these arrangements. The Department contends that Mack paid sales tax on only his half of the proceeds when he was required by law to pay sales tax on the total gross receipts regardless of what portion of these receipts went to the store owner. Mack says that in most instances he deducted the sales tax from the gross proceeds of each machine and then split the balance fifty-fifty with the owner of the premises.
Mr. Butt testified that in performing the audit, he used records which Mack called “spread sheets,” as well as check stubs and income tax records. Mack had not retained small slips of paper which were used to record each individual transaction. Mack stated that he recorded these amounts on his spread sheet and then threw the slips away.
In conducting the audit Butt used figures which were on both income tax records and spread sheets. He deducted from these amounts tobacco sales, certain commissions, and Florida receipts. He then stated that the amount thus obtained was only approximately one-half of the total gross receipts because Mack stated that he divided the gross proceeds fifty-fifty with the premises owner. As a result he doubled his final figure and then determined the amount of sales taxes based on the new figure.
Mack testified that he told Butt that the spread sheets had recorded one hundred percent of the gross receipts in all but a few cases. Butt, however, stated that based on his investigation the spread sheets had not recorded the correct amounts. Butt also stated that he had not determined what portion of money Mack had coming in in currency even though the machines took only coins.
Mack contested the Department’s method of determining his gross receipts. He testified that his spread sheets recorded one hundred percent of his gross receipts in all but a very few cases. In these other eases the store owner would pay the taxes on his half of the proceeds. The only testimony on this point was given by Mr. LeMay, who testified that he always filed a sales tax return for his half of the proceeds.
Mack had his bank deposit slips introduced into evidence. These slips separated the amount of coins, currency, and checks in each deposit. Mack stated that his machines took only coins. The currency and checks were income from other activities. *802 The Department, however, based their sales tax figures on the total deposit. As a result, Mack testified that the Department’s figures misstated his actual receipts from the machines.
The other evidence presented at trial concerned the privilege licenses. We will consider that evidence separately when we address the issues raised concerning these licenses.
In its appeal from the sales tax cases, the Department raises three issues. First, the Department contends that Mack did not meet his burden of overcoming the prima facie correctness of the final assessment of sales taxes. Second, the Department argues that the owner of amusement machines is required to report his gross receipts without any deduction for commissions paid to a location owner, and that Mack failed to report the full amount. Finally, the Department contends that the trial court erred in allowing Mack an exemption for receipts from machine sales at Elba Work Release Center.
A payer of sales tax has a duty to keep suitable records from which his tax liability can be determined by the Department. § 40-23-9, Code 1975. However, no particular method of record keeping has been established by the courts. State v. Mims, 249 Ala. 217, 30 So.2d 673 (1947). But this does not mean that the Department is required to rely on the verbal assertions of the taxpayer. State v. Ludlam, 384 So.2d 1089 (Ala.Civ.App.1980).
The Department argues that because Mack’s records were so incomplete, he could not overcome the prima facie presumption of correctness of its final assessment. We disagree.
The adequacy of a taxpayer’s records to establish his tax liability is for the trial court to decide and its decision will not be set aside absent an abuse of discretion. See State v. Levey, 248 Ala. 656, 29 So.2d 129 (1946). In the instant case Mack’s records, although inartfully kept, were, as the trial court found, sufficient to permit the Department to establish his tax liability therefrom.
The record shows that Mack recorded the gross receipts from his machines on “spread sheets.” The amounts placed on the “spread sheets” came from slips of paper upon which he noted the amount of money taken from each machine. These slips of paper were destroyed after the amounts thereon were recorded on the “spread sheets.” The record also revealed that Mack retained bank deposit slips and income tax records, which were examined by the Department. Based on this aspect of the record we cannot say that the trial court erred in holding that Mack’s records were sufficient to permit a determination of his tax liability.
Notwithstanding the possible adequacy of his records, the Department says that Mack did not, nevertheless, overcome the prima facie correctness of its final assessment. § 40-2-22, Code 1975. The trial court found, however, that Mack had met his burden. Where the trial court hears the evidence ore tenus, a presumption of correctness attends its findings, and this court will not overturn the trial court’s judgment absent a showing that it is palpably wrong. Pinson v. Veach, 388 So.2d 964 (Ala.1980).
In the instant case there is a serious discrepancy between the Department’s figures and Mack’s figures. The Department says that Mack’s figures on his “spread sheets” were only half of his gross receipts and gave this as the reason for doubling the amount deemed to be the gross proceeds of all the machines. Mack disputes the Department’s figures and shows that the Department used many incorrect figures in arriving at its final assessment.
The evidence shows that the Department relied on bank deposit slips but failed to separate currency and checks from coins. It is undisputed that Mack’s machines take only coins and that any portion of the bank deposit which came from checks and currency was income from sources other than the machines.
The doubling of the gross proceeds of the machines on the assumption that Mack had *803 recorded only half of the gross receipts in every instance was mere conjecture on the part of the Department with no real evidence to support such a conclusion. State v. Mims, supra. On this aspect of the case the trial court could have found that the Department’s figures were based on erroneous assumptions. Moreover, the trial court also could have concluded that the evidence justified a finding that Mack had rebutted the presumption of correctness attending the Department’s final assessment.
The Department contends, and we agree, that Mack is required by § 40-23-2(2), Code 1975, to report the total gross receipts from his machines regardless of any commissions paid to location owners. See State v. Woods, 242 Ala. 184, 5 So.2d 732 (1942). Mack testified that he did report his gross receipts in all but a few cases. In these instances he would report his half of the receipts and the location owner was supposed to report the other half of the receipts for sales tax purposes.
Mr. George LeMay testified that he had such an arrangement with Mack and stated that he paid the sales tax on his share of the receipts from the machines on his premises. The Department does not deny receiving these payments. However, the Department does say that Mack presented no evidence to show that the Department received sales tax in the other instances where he had a fifty-fifty arrangement with the location owner. For example, Mack testified that he had a fifty-fifty arrangement with B & W Game Room in Georgiana, Alabama, but there is no evidence that B & W paid sales tax on its share of the receipts. Nor is there evidence that the sales tax was paid by any of the other location owners with whom Mack had an arrangement to split the receipts of the machines, except LeMay.
Section 40-2-22, Code 1975, authorizes the circuit court to fix the amount of the final assessment if it considers the Department’s figures to be either too high or too low. See Paramount-Richards Theatres v. State, 252 Ala. 54, 39 So.2d 380 (1949). In the case at bar Mack admitted that he did not report all of his gross receipts in several instances, and the evidence reveals only one instance where the location owner paid the sales taxes on his share of the receipts. Consequently, the evidence is insufficient to support a finding that the sales taxes had been paid in those instances where Mack split the receipts with the location owner, except in the LeMay instance. Accordingly, that aspect of the judgment holding that Mack owed no additional sales tax is reversed and the cause remanded for the trial court to determine if Mack is able to rebut by sufficient evidence the prima facie presumption of correctness of the final assessments in those instances where Mack claimed to have a fifty-fifty arrangement with the location owner.
In making the determination of whether Mack should pay additional sales tax to the Department, the trial court is also directed to consider the gross receipts from the machines located at the Elba Work Release Center. In its judgment the trial court allowed an exemption from sales tax for the machines Mack had placed in the Work Release Center. The Department contends such an exemption is erroneous. We agree.
Section 40-23-4, Code 1975, provides numerous exemptions from sales tax. Among those exemptions is one for the sale of tangible personal property to the State of Alabama and this is the one relied on by Mack. However, Mack was not selling tangible personal property to the State of Alabama; he was selling to the inmates in a state correctional facility. There is no exemption for sales made to inmates of the state penal system.
Exemptions from taxation are to be strictly construed against the exemption unless the intention to exempt clearly appears from the statute. Brundidge Milling Co. v. State, 45 Ala.App. 208, 228 So.2d 475 (1969). In this case the statute does not provide a specific exemption for sales to inmates in a state correctional facility, and the trial court’s judgment so holding is erroneous.
*804 The Department has also appealed from the trial court’s findings in six privilege license cases. Two issues are presented for our review. The first issue is whether the trial court could waive the imposition of the statutory penalty and interest when it finds that additional license taxes are due. The second issue raised is whether § 40-12-2(e), Code 1975, requires a levy of an additional fifty percent license tax on machines licensed under § 40-12-176(p).
In addressing the first issue, § 40-12-10(e), Code 1975, provides:
(e) All license taxes levied by this title, except as otherwise provided, shall be due and payable as of October 1 of each year and shall be delinquent November 1 thereafter. Where any license issuable by the probate judge or commissioner of licenses shall be delinquent, the same shall be subject to a penalty of 15 percent of the amount of the license, which penalty must be collected by the probate judge or ■ commissioner of licenses when the license is taken out together with interest at six percent from the date of delinquency .... [Emphasis added.]
The Department contends that the penalty provision of § 40-12-10(e) is mandatory, and that the trial court had no authority to remit the penalty in this case. Mack, however, argues that in all cases he paid his license taxes on time, and that the errors in amount were the Department’s fault and not his. As a result, he contends that he was not delinquent in the payment of his license taxes.
It is undisputed that Mack paid his license taxes on time. He also attempted to pay the correct amounts. The errors in payments were caused by the Department and the Probate Court of Covington County using the wrong figures. None of the errors were the fault of Mack.
Frances Solomon was in charge of the collection of license taxes in Covington County. She stated that every year a problem arose as to the proper amount of license taxes to be paid by Mack. In at least two of the years in question, she called the Department in Montgomery to have them calculate the proper amount of license taxes. It was her testimony that once the Department gave her a figure, she was bound to follow the Department’s determination. As a result, in every year, Mack paid the total amount arrived at by the Department.
Mack agrees that these figures were incorrect and that he owes more license taxes. However, he argues that he should not be penalized for the Department’s error. We agree.
 It is clear that the penalty provision of § 40-12-10(e) is mandatory. Such penalty, however, is for a breach of duty by the taxpayer. State v. Clarke, 240 Ala. 362, 199 So. 543 (1941); see 85 C.J.S. Taxation § 1024 (1954). It would certainly be unfair to penalize a taxpayer for the errors of the Department. Also, the term “delinquent” in the statute connotes a breach of duty by the taxpayer. There is no evidence that Mack in any way breached his duty. As a result, we find that the trial court properly disallowed the penalty.
The final issue in this case involves statutory construction. The Department contends that Mack’s vending machines should have been taxed at a rate of $12.00 per machine instead of $8.00 per machine. The Department argues that § 40-12-2(e), Code 1975, automatically increases the amount of the license tax by fifty percent.
That section provides:
(e) There is hereby levied for the use and benefit of and to be paid to the county in which the license is issued, in addition to all license taxes levied under the provisions of article 2 of this chapter, for state purposes and which are payable to the judge of probate or commissioner of licenses, a sum equal to 50 percent of the amount levied for state purposes, except as otherwise specificaiiy provided. [Emphasis added.]
Section 40-12-176, Code 1975, relating to vending machines was passed subsequently by the legislature. It is the Department’s argument that § 40-12-176(p) provides for a license fee of $8.00 on machines that do *805 not vend tangible personal property. The Department contends that this amount must be increased by fifty percent because of the provisions of § 40-12-2(e).
Section 40 — 12-176(p) provides:
(p) On all other vending machines whereby tangible personal property is not sold but services or amusements are vended ... operators shall pay a license as follows: ... on all machines where over one cent is used, a fee of $8.00. The license is to be paid, collected and distributed as heretofore provided in this section. [Emphasis added.]
Mack cites us to § 40-12-176(b), which provides:
(b) The revenues produced by the license taxes levied in this section shall be divided equally between the state and the several counties in which it is collected. No separate county license shall be required. [Emphasis added.]
The Department argues that subsection (b) applies only to machines vending tangible personal property. Further the Department argues that subsection (p) is a separate and distinct provision which must be read in pari materia with § 40-12-2(e).
It has often been stated that tax laws are to be strictly construed against the taxing power and in favor of the taxpayer. State v. Kershaw Manufacturing Co., 372 So.2d 1325 (Ala.Civ.App.1979). In examining the three provisions in this case, it is clear to this court that the trial court was correct in finding that the Department could not assess an additional tax of fifty percent.
Section 40-12-2(e) does assess an additional fifty percent county tax except as otherwise specifically provided. Section 40-12-176 does specifically provide that no additional county tax shall be levied. The title of § 40-12-176 is “vending machines.” The Department would have us hold that § 40 — 12-176(b) applies only to those machines which vend tangible personal property under subsection (a). However, no such distinction is made in the section.
Further, subsection (p) states that the license is to be paid as “heretofore provided in this section.” Clearly the .words “this section” indicate § 40-12-176 and not § 40-12-2. In reading all of these provisions, we find that § 40-12-176 has done away with an additional levy of county taxes for vending machines. The trial court was, therefore, correct in holding that Mack was required to pay only $8.00 per machine instead of $12.00.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.
WRIGHT, P. J., and HOLMES, J., concur.