BRADLEY, Judge.
The State of Alabama, Department of Revenue (State) appeals from a judgment of the Circuit Court of Montgomery County holding that International Minerals and Chemical Corporation (Company) is not liable to collect and remit to the State the forest products severance tax as levied by § 9-13-86, Code of Alabama 1975; nor is it subject to the forest products privilege tax as levied by § 9-13-82, Code of Alabama 1975.
The State entered a final assessment against the Company in the amount of $3,182.22 for severance tax, and the Company appealed to the Circuit Court of Montgomery County. The case was submitted to the' court upon the pleadings and a stipula *61 tion of facts plus exhibits. The trial court held that the Company manufactured ferro-silicon at its Bridgeport, Alabama plant by the use of the open hearth method; that the end product of the manufacturing process, i.e. an alloy of elemental silicon and iron, results from a series of reactions of silica (as quartzite gravel) and iron (as scrap iron); that wood chips are “primarily used as a contributor of carbon and heat in the raw material charge to produce a complete reaction of silica to silicon . [and] as a conditioner and heat element to maintain the desired permeability of the reacting mass;” and that the Company is not a processor or manufacturer within the purview of the forest products severance tax. From this judgment the State appeals.
The State argues that the Company is a “manufacturer” within the meaning of § 9-13-80(8), Code of Alabama 1975 and, therefore, is liable for the withholding and remitting of the severance tax on the purchase of wood chips. The Company also uses the wood chips in its manufacturing process and is thus liable for the processor’s privilege tax levied by § 9-13-82, Code of Alabama 1975.
Sections 9-13-80(8) and 9-13-86, Code of Alabama 1975, provide in pertinent part as follows:
(8) MANUFACTURER. ... as applied to pulpwood, chemical wood and bolts, the person who operates the paper mill, chemical plant or other plant in which such forest products are processed
At the time of rendering such quarter annual reports, the manufacturer of forest products shall pay to the department of revenue the taxes imposed by this article with respect to all forest products severed from the soil in the state of Alabama and embraced in such report . . .
Section 9-13-82(b), Code of Alabama 1975 provides in pertinent part as follows:
(b) There is also levied a privilege tax against the processor of the forest products or the manufacturer using the forest products in an amount equal to 50 percent of the tax on the severer as set out above.
As suggested by the Company, we shall give to the words of the above quoted statutes their plain, ordinary and everyday meaning unless the context of the statute suggests a different meaning. State v. Crayton, Ala.Civ.App., 344 So.2d 771, cert. den., Ala., 344 So.2d 775 (1977). We are also mindful that courts, in construing statutes, should observe the plain language used by the legislature and not search for an imaginary purpose. Brundidge Milling Co. v. State, 45 Ala.App. 208, 228 So.2d 475 (1969).
We conclude, as did the trial court, that the Company is a manufacturer of ferrosilicon, which is an alloy resulting from the reaction of silica and iron. The Company is not a processor or manufacturer of wood chips within the meaning of §§ 9-13-82(b) and 9-13-86, Code of Alabama 1975, because the Company buys its wood chips from several Alabama suppliers. In other words, the wood logs have been processed into wood chips by someone else, and the Company just buys them for its own manufacturing process.
What use does the Company make of the wood chips in its manufacturing process? As set out in the stipulation of facts and as found by the trial court, the wood chips purchased by the Company are used to contribute carbon and heat to the raw material charge to produce a complete ■ reaction of silica to silicon and as a conditioner and heat element to maintain the desired permeability of the reacting mass. The expected result of the manufacturing process engaged in by the Company is the alloy ferrosilicon, not a finished forest product; whereas the word “manufacturer” as defined by § 9-13-80(8) envisions a person engaged in processing or manufacturing forest products into a finished forest product.
We believe this interpretation of § 9-13-80(8) is called for when one applies a plain, literal meaning to the words of the code section.
*62 Consequently, the trial court’s judgment that the forest products severance tax levied against the Company should be set aside as being invalidly assessed and that the Company is not subject to the forest products privilege tax for the reason that it is not a processor or manufacturer of forest products is correct and must be affirmed.
AFFIRMED.
WRIGHT, P. J., and HOLMES, J., concur.