WRIGHT, Presiding Judge.
This is an appeal from a lease tax assessment under § 40-12-220 to -227, Code of Alabama 1975.
After audit, lease tax assessment in the amount of $481,378.20, including penalty and interest, for the period of July 1, 1971 through September 30, 1979, was entered by the Alabama Department of Revenue (State) against Georgia-Florida-Alabama Equipment Co., Inc. (GFA). The assessment was appealed to circuit court. GFA and State filed motions for summary judgment with supporting exhibits and affidavits. After hearing and arguments, partial summary judgment was entered in favor of each party. State appealed.
The matter arose in the following manner: GFA is a corporation organized in 1957 in Houston County, Alabama, for the primary purpose of purchasing the stock of Georgia-Florida-Alabama Transportation Co., Inc. (GFAT), a trucking company, and leasing to it its equipment. GFAT was a close-held corporation, its stock being largely owned by one family. The stock of the family was purchased by GFA giving it control of GFAT. A lease contract was executed between the corporations in 1957 and continued in existence up to and during the period of assessment.
The statute taxing the leasing or renting of personal property was enacted by the Alabama legislature and became effective July 1, 1971. The act imposed a one and one-half percent tax on the gross proceeds of a lease of automobiles and trucks. In *474 1973, the legislature amended the exemption section of the original act. That amendment, as pertinent, is as follows:
“(1) The gross proceeds derived by the lessor ... from the leasing of tangible personal property are exempt from taxation when the lessor and lessee ... are wholly-owned subsidiary corporations of the same parent corporation or one is the wholly-owned subsidiary of the other; provided that the appropriate sales or use tax, if any was due, has been paid on such item of personal property.... ”
There is no dispute that GFA did not obtain a license from the State to engage or continue in the leasing business as required by the Act (§ 40-12-221, Code 1975) nor did it pay the lease tax levied by the Act (§ 40-12-222, Code 1975) for the audit period. However, GFA defends the assessment of the lease tax by claiming the exemption added to the Act in 1973 and set out herein above. Therefore the matter before the court below on the motions for summary judgment, and now here, was: under the evidence presented, does GFA qualify, as a matter of law, for the exemption?
The trial court found as a matter of law that GFA did qualify for the exemption from its effective date of September 16, 1973. It found that GFA owed the lease tax for the period from July 1, 1971 to September 16, 1973, in the amount of $84,-157.16. However, credit was given for the sales tax paid on equipment purchased and leased during the period from July 1, 1971 to September 16, 1973. That amount was determined to be $51,464.32. Judgment was then entered for the State in the amount of $32,692.00, plus interest as allowed by law. From that judgment the State appeals.
State first contends that summary judgment in favor of GFA is erroneous because there is a question of fact as to the entitlement of GFA to the exemption. We do not agree with State’s contention.[1] We have carefully considered State’s contention and conclude that the factual evidence is not in material dispute. It is the legal conclusions which may be drawn from the facts which are disputed.
It is the evidence of GFA that in 1957, it purchased all of the stock in GFAT owned by the Dean family — a total of 1152 shares of the 1440 shares issued. Eleven hundred fifty of the shares were transferred to GFA. For a reason explained by GFA, but not fully understood by this court, two shares were transferred (one to each) to two of the incorporators of GFA. Those shares were endorsed in blank and delivered to GFA, where they have been since held. The remaining 288 shares were owned by two employees of GFAT. In 1959 GFA entered into an agreement to purchase those shares. Payment was subsequently made by checks of GFA. The certificates for those shares were cancelled on September 9, 1968, and a certificate issued for 288 shares to GFAT which has been held as treasury stock since that time. It is upon these facts that GFA submits that GFAT is legally its wholly owned subsidiary.
The State does not traverse these facts by its affidavits or evidence. The State submits that the records of GFAT show that GFA owns 1150 of the 1440 issued shares, one share is issued to C. Milton Adams, one share is issued to Marjorie Adams and GFAT is issued 288 shares of its own stock. Thus GFAT is legally not wholly owned by GFA.
Upon submission of these undisputed facts for summary judgment, it became the duty of the court to determine as a matter of law whether GFAT was or was not a corporation wholly owned by GFA under *475 the exemption statute. This status of a case is that appropriate for consideration of summary judgment. Rule 56(c), A.R.Civ.P. Kutack v. Winn-Dixie Louisiana, Inc., 411 So.2d 137 (Ala.1982).
State next contends that the effect of the judgment for GFA was to determine disputed ownership of stock when apparent owners are not parties and cannot be made parties. This contention has no merit inasmuch as the dispute here is only between the State and the taxpayer for purposes of application of the statute involved. No one other than parties to an action can be bound by a judgment entered therein. Benson Hardware Co. v. Jones, 223 Ala. 287, 135 So. 441 (1931).
We will now return to the issue of whether the trial court correctly determined that GFAT is a “wholly-owned” subsidiary of GFA. We have found no definition of the term “wholly owned” as used in the statute. However, in the absence of a specific definition, it is a rule of construction that terms are viewed in light of their usual and ordinary meaning with consideration of the purpose and context of the statute where they are found. State v. International Minerals & Chemical Corp., 381 So.2d 60 (Ala.Civ.App.), aff’d, 381 So.2d 62 (Ala.1979). It is the opinion of this court that the term “wholly owned” in § 40-12-224, Code of 1975, means that all of the outstanding shares of stock of one corporation are owned, legally or equitably, and controlled by the other corporation. “Wholly” has been said to mean “completely,” “exclusively,” “entirely.” 45 Words & Phrases 167. “Owned” is a word of varied meaning depending largely upon where and in what context it is used. In this instance we presume the legislature intended it to have its natural and ordinary meaning. Lavretta v. L. Hammel Dry Goods Co., 243 Ala. 34, 8 So.2d 264 (1942). We consider such meaning to be: to have legal or equitable title-giving right of absolute control.
We have said, GFA holds by issuance 1150 shares of GFAT stock. It also holds two shares issued to Milton and Majorie Adams, two of its own shareholders, which were endorsed and delivered to it in blank. State, relying on Title 10, § 168, Code of 1940, contends such blank endorsement and delivery is insufficient. We note that the relied statute was repealed by enactment of the Uniform Commercial Code effective December 31, 1966. Section 7-8-307 of the Code then became effective and provides that as against the transferor the transfer without endorsement is complete upon delivery. Thus GFA became the owner of the two shares issued to the Adamses upon delivery. Of course, the affidavit of the Adamses admits that ownership. Eleven hundred fifty-two shares are thus established as “wholly owned.”
State contends that the remaining 288 shares of the original stock now admittedly held on the books of GFAT as treasury stock prevent GFAT from being a “wholly owned” subsidiary. This contention will not stand examination. Treasury stock may be issued but is not outstanding stock and may not be voted by the corporation. It is merely another property of the corporation owned by the outstanding stockholders and capable of resale. §§ 10-2A-2, -53, Code 1975; 18 C.J.S. Corporations § 212. It is to be seen therefore, that all of the outstanding shares of stock of GFAT are “wholly owned” by GFA as a matter of law under the facts and have been since prior to July 1, 1971.
The State has submitted copies of franchise tax reports of GFAT which show the 288 shares being carried as treasury stock with a reported cost of $46,258.00. The State argues that this refutes the contention of GFA that it paid for the purchase of the stock and thus is at least the equitable owner. Perhaps the tax report does present a scintilla as to who paid for the stock. However, any conflict on this issue is immaterial in view of the undisputed evidence that the stock is now treasury stock. As we have herein pointed out, treasury stock is nothing more than corporate *476 property owned by the outstanding shareholders.[2]
The second requirement of the exemption is that sales tax must have been paid on the property leased by the lessor corporation. That sales tax was paid by GFA on all equipment leased, including that purchased from July 1, 1971 to September 16, 1973, prior to the exemption, is undisputed. In fact, State made a sales tax audit for the period through 1975. Therefore the entry of summary judgment in favor of GFA as to the assessment after passage of the exemption was proper and is affirmed. With that finding, it must follow that the denial of summary judgment to the State on the assessment for the same period was not error.
The last contention of the State which seemingly questions the granting of summary judgment in favor of the State as to the assessment prior to the passage of the exemption is difficult to follow. The trial court found GFA liable for lease tax for the period from July 1, 1971 through September 16, 1973. However, it credited against that tax the amount of sales tax paid for the equipment purchased during that time. Presumably, the court’s reasoning was that if the State was going to claim and collect lease tax, it could not equitably retain the sales tax paid. Even prior to the enactment of the exemption, the purchase of personal property for leasing was a wholesale sale and exempt from sales tax if subject to the lease tax. § 40 — 23—1(a)(9)j, Code 1975. We find no error in the judgment.
Judgment is affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.

. However, we do question the advisability of the disposition of a case by summary judgment where the entire evidence is before the court and the matter could be decided on the merits. We have noted several instances recently where the court sitting without a jury has the entire case before it as though for final judgment, yet grants summary judgment when it may be contended there are material facts in dispute. Such disposition may require reversal under law applicable to summary judgment and remandment for reconsideration on the same materials and evidence. This seems counterproductive in view of crowded dockets at both trial and appellate levels.

. The franchise tax returns with attached balance sheets carry the treasury stock at cost as a deduction from shareholder’s equity, while showing 1440 shares issued at $100 par. Whether such is a proper accounting procedure is not relevant to this case.