EDWARD N. SCRUGGS, Retired Circuit Judge.
This is an income tax case.
Neither Mr. nor Mrs. Massey filed a State of Alabama individual or joint income tax return for the years 1974, 1975, 1976 and 1977. After a cash expenditure audit which was conducted by the Department of Revenue (the department), tax assessments were made final against the taxpayers for each of those calendar years. The Masseys appealed to the circuit court where an ore tenus trial was held before the court which resulted in a judgment disallowing the four annual assessments in their entirety. The department duly perfected the present appeal.
When the evidence is presented orally before the trial court in a tax case, its factual findings are presumed to be correct and will not be disturbed on appeal if the judgment is supported by the evidence, or reasonable inferences therefrom, unless the determination of the trial court is palpably wrong. Eagerton v. Courtaulds North America, Inc., 421 So.2d 104 (Ala.1982).
Under § 40-2-22 of the Code of Alabama (1975), the department’s final tax assessment is presumed to be prima facie correct upon a taxpayer’s appeal to the circuit court, and the taxpayer bears the burden of showing that the assessment is incorrect.
We have searched the record and researched the law to ascertain if the judgment was supported by the evidence, to determine whether it was palpably wrong and to find out if the taxpayers met the burden of proof that the assessments were incorrect. We affirm.
In view of the applicable ore tenus presumption, the summary of facts herein is largely restricted to that evidence which tends to uphold the decision of the trial court. Our task has been rendered less tedious because of the caliber of briefs filed by learned counsel for the parties.
We quote from the department’s brief to define the cash expenditure audit method employed by it as to the Masseys.
“Income is determined pursuant to a net worth audit as follows: To begin, it is necessary to ascertain a beginning balance. This is done by using the records provided by the taxpayer, or if none are provided, the best information available. Cash received and cash paid out during the year is then determined, again using the taxpayer’s records or the best available information, whichever the case may be.... Finally, the ending balance is determined. If the cash expenditures are more than the cash received, it is assumed that the excess was derived from currently reportable income unless it is shown that the excess expenditures came from cash on hand.”
The taxpayers admit that, while not authorized by statute, the audit proce *1042 dure as here utilized is a valid audit process if the essential requirements therefor are met.[1] Both parties correctly concur that, in using that method, the starting point for an audit must be the establishment of the amount of cash on hand held by the taxpayers as of the commencement date of the audit period. United States v. Grasso, 629 F.2d 805, 807 (2nd Cir.1980). This initial cash on hand figure must be established by the department with reasonable certainty. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).
Here, a certified copy of a September 3, 1970 judgment of the United States District Court for the Eastern District of Louisiana was introduced into evidence. It awarded $154,207.07 to Mr. Massey against Williams-McWilliams and Employers Liability Assurance Corporation, Ltd. The department had demanded records from the Masseys and deemed those which were furnished to be inadequate. However, the department was informed that the source of the money which the Masseys expended during the audited period arose from the proceeds of that judgment and from the sale of a Louisiana truck line owned by Mr. Massey. The department conducted no investigation as to either of such matters but established a zero balance as being the amount of cash which the Masseys had on hand as of January 1, 1974.
Mr. Massey is deceased. Mrs. Massey testified that she married Mr. Massey in October, 1972. Without objection, she stated that her husband informed her that he had $200,000 which he received from the settlement of his industrial accident case and from the sale of his trucking business. After the settlement of his case, Mr. Massey lived from those proceeds. She further swore that her husband carried money upon his person and that he furnished cash to her as needed. Mr. Massey did not trust banks and, consequently, never had a checking account. During their marriage, neither husband nor wife were gainfully employed but Mr. Massey received $621 each month as social security disability benefits.
It is essential that the department investigate all reasonable explanations provided by the taxpayers as to cash on hand at the beginning of the cash expenditure audit period. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).
“By stipulation of the parties the only element of net worth open for determination in the proceedings below was the amount of cash on hand at the beginning and end of each of the tax years in question.
“We turn first of all to a consideration of taxpayers’ contention that the Commissioner’s determination of deficiency is arbitrary and excessive and is not entitled to the usual presumption of validity. The Tax Court seems to have been of the opinion that the taxpayers could successfully attack respondent’s figure for cash on hand only by making an affirmative showing of the correct amount. In this connection the Tax Court said (R.A. pp. 311-12): ‘The deficiencies were determined upon the assumption that Thomas had no cash on hand on January 1, 1943. The burden is upon the petitioners to prove the amount of cash on hand.’ And again (313): ‘The record is at least equally consistent with the conclusion that he had no cash. The petitioners have shown no basis for a finding that they had any cash on hand at any of the critical dates, and accordingly we must sustain the respondent as to that matter.’
“We believe that these quoted passages do not correctly state the law. The presumption which favors the determinations of the Commissioner is not to be regarded as meaning that any arbitrary figure assigned to the cash on hand account without support in the record must nonetheless be treated as conclusive in the absence of an affirmative showing by the taxpayer of the correct amount.
*1043 “We think it clear, therefore, that respondent’s determination that the taxpayer had no cash on hand was sustained not because the facts of the case warrant such an inference, but merely because the taxpayer has made no affirmative showing to the contrary.
“If respondent is to be permitted to make an arbitrary guess as to the proper figure for the cash on hand account, there would seem to be no reason as a general proposition why similar guesses should not be made as to each of the constituent elements comprising the taxpayers’ net worth. Under these circumstances the entire net worth technique becomes nothing but an elaborate accounting sham lending a semblance of system and logic to a determination of deficiency which could have no greater validity than the original guesswork upon which it was based.”
Thomas v. Commissioner of Internal Revenue, 232 F.2d 520, 524 (1st Cir.1956).
If the taxpayers’ evidence was believed, it was adequate to prove that the department failed to establish a proper firm opening cash on hand figure then held by these taxpayers. Further, the trial court could have concluded from the evidence that the department did not pursue reasonable explanations provided by the taxpayers as to their source of nontaxable funds which were expended by them during the four years in controversy. Actually, if accepted by the trial court as being the truth, the evidence was adequate to establish that the social security receipts and the cash nest egg of Mr. Massey were sufficient to provide for their support and to make the cash expenditures as ascertained by the department over the four year period.
In estimating the personal living expenses of the Masseys, the department made use of an April, 1977, article from “Consumer Views” published by Citibank of New York. The examination of the department’s agent by the Masseys’ attorney cast much doubt upon the applicability to the Masseys of the specified living expenses as set forth by the article in almost every category of ordinary personal living expenses. Also, Mrs. Massey testified that their average monthly living expenses amounted to about $1,000 while the amounts charged by the audit were $20,000 for 1974; $23,000 for 1975; $25,000 for 1976; and $27,000 for 1977. Accordingly, a question was presented to the trial court as to whether the living expenses as charged by the audit were reasonably correct.
Mr. Massey traded trucks and automobiles on many occasions during the four year period covered by the audit. As to each of those transactions,.he was charged by the audit with varying amounts of cash expended as a down payment, or as the balance due on the trade, upon the vehicles being bought or traded. However, almost invariably, he financed those down payments or balances due rather than paying it in cash.
An admitted over expenditure of cash of $18,200 was made by the audit for the year 1975 as to the purchase, trade and/or sale of two Winnebago motor homes by Mr. Massey.
The Masseys were charged with a cash down payment of $12,289 upon the purchase of their home, while a purchase money mortgage from them for that identical sum of money was recorded in the probate office.
From the above matters, it was within the discretion of the trial court to conclude that the amount charged for the Masseys’ personal living expenses during the audit period was greatly excessive and that, because of erroneous cash expenditure charges placed against them for vehicles, the motor homes and the down payment on the house, the audit was incorrect to the extent that Mr. Massey’s nontaxable resources were sufficient to provide for the actual expenditures made by them during each of the four years in question. The judgment of the trial court was supported by the evidence and it was not plainly wrong. We are required to affirm.
The foregoing opinion was prepared by Retired Circuit Judge Edward N. Scruggs *1044 while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e) of the Code of Alabama of 1975 and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.

. The requirements for the successful use of a cash expenditure audit are identical to the requirements for the net worth method, which are succinctly stated in United States v. Grasso, 629 F.2d 805 (2nd Cir.1980).