The sole legal issue is whether the taxpayer's entire business is exempt from property taxation pursuant to §40-9-1(20), Code of Ala. 1975.
Chemical Waste Management, Inc. (taxpayer), is a corporation that specializes in hazardous waste treatment, containment, and disposal. Hazardous waste is shipped to the taxpayer's business site in Emelle, Alabama, from throughout the southeastern United States.
The record shows that in 1979 the Sumter County tax assessor (tax assessor) granted the taxpayer an overall exemption from ad valorem taxation for its business at Emelle. In 1984, the tax assessor denied the taxpayer that exemption it had received for five years. The Sumter County Board of Equalization overruled the taxpayer's subsequent objections to the new tax assessment. An appeal to the circuit court resulted in a summary judgment against the taxpayer, and this appeal followed.
Section 40-9-1(20), Code of Ala. 1975, provides that certain enumerated property is given an exemption from ad valorem taxation. The exemption applies to:
 "All devices, facilities or structures, and all identifiable components thereof or materials for use therein, acquired or constructed primarily for the control, reduction or elimination of air or water pollution."
The taxpayer contends that hazardous waste management is a form of air or water pollution control and that its site at Emelle was constructed primarily for that purpose. The taxpayer, therefore, argues that the statute clearly applies to its business and that it is entitled to the exemption as a matter of law.
The trial court, in affirming the tax assessor's denial of the taxpayer's exemption, stated the following:
 "The commercial storage, treatment and disposal of hazardous waste by the [taxpayer] is not 'primarily for the control, reduction or elimination of air or water pollution' as set out in the statute. This Court is of the opinion that the legislature of this state intended to protect the public and public interest by encouraging business to control, reduce or eliminate air and water pollution. It was not their intent to grant an exemption for the operation of a commercial hazardous waste disposal site. If the legislature had intended to include 'hazardous and toxic waste,' it should have used those words. The storage, disposal and treatment of hazardous and toxic waste is not the control, reduction or elimination of 'air or water pollution.' "
The trial court concluded that the taxpayer "does not use the vast majority of its property and equipment to clean air or water" and, therefore, denied the business an overall exemption from property tax; however, the court did grant the taxpayer an exemption for that equipment used to filter air from storage tanks or to clean rain water which falls into open storage pits.
By far the greatest source of difficulty for courts which have construed statutes similar to the one in question has been in construing the word "primarily" in the phrase "acquired or constructed primarily for the control, reduction or elimination of air or water pollution." A number of courts have attempted to distinguish the end-use of the property in question as the test of whether the tax exemption should apply. If the property is determined to have a substantial function in the production of products or services, the exemption does not apply; if the end-use of the property is determined to be primarily for pollution control, which is incidental to the manufacturing process or service which that *Page 117 
business is engaged in, the exemption does apply. See, Annot., 65 A.L.R.3d 434 (1975).
The problem becomes more complicated when the property both controls pollution and contributes to the production of products or services. In these cases, courts have tried a variety of approaches, including giving partial exemption to a single facility, Weyerhaeuser Co. v. State Department ofEcology, 86 Wn.2d 310, 545 P.2d 5 (1976), or exempting only that property used exclusively for pollution control. In the latter situation, property used primarily for pollution control which also provided incidental benefits to the production process was not given the exemption; the property used exclusively for pollution control was given the exemption. SunOil Co. v. Lindley, 56 Ohio St.2d 313, 383 N.E.2d 908 (1979).
Thus, courts have attempted to distinguish such property and equipment as primarily directed either to pollution control or to the stated business purpose of the enterprise itself. As has been indicated, this is not always an easy distinction to make because there is frequently an overlap of pollution control with the principal business function. Some states have responded legislatively to this problem through regulations which define "facility" as that which is not necessary to the manufacturing of products or the rendering of services. The result follows that the exemption is given only to the extent of the cost attributed to pollution control which is necessitated by the manufacturing of products or the rendering of services. Weyerhaeuser, supra, 86 Wn.2d at 317,545 P.2d at 10.
In the case at bar, the issue of how to construe the word "primarily" with respect to the taxpayer becomes even more acute. The taxpayer argues that its hazardous waste management business is entitled to complete exemption on the ground that it is in the business of pollution control. The taxpayer argues for a complete merger of the "business" with the "pollution control" function of its physical plant.
The state's response to the "complete merger" theory is that the primary purpose of the taxpayer's facility is not pollution control but profit. The taxpayer's answer is that industries do not install pollution control facilities through any altruistic desire to maintain clean air and water but because it is necessary to comply with state and federal laws if they are to continue to operate and, consequently, to make a profit.
This emphasizes the principal reason for the legislature's enactment of the tax exemption which is to ease the new and sometimes high cost of the addition of pollution control property and equipment to existing businesses, as well as to businesses which will be started after passage of pollution control legislation. The goal of the exemption is to encourage all businesses to control pollution and to assist them in their compliance with mandatory environmental regulations. Seegenerally, Reed, Incentives for Pollution Abatement, 12 Ariz.L. Rev. 511 (1970).
As the cases show, it is rarely a clear-cut matter as to which part of the facility is primarily for pollution control. The heart of the problem is stated thus:
 "[A] good [pollution abatement] program is normally so closely related to the production process that very few expenditures will meet either the primary purpose or the exclusive use test.
". . . .
 "Pollution problems are usually an integral part of the production process. Their control requires a plan carefully integrated into the entire operation of the business. Nearly all industrial pollution can be controlled, and effective control is best managed if the production process is designed to minimize waste.
 "Some methods of control are to substitute fuels or power sources; substitute raw materials; use different production processes; change the design of the product; capture pollutants before they leave the plant; change disposal practices so as to encourage reclamation of waste products; and recycle either waste products or resources used in the productive process." *Page 118 
1 A. Reitze, Jr., Environmental Law ch. 1, at 77-78 (1972).
In Eagerton v. Courtaulds North America, Inc., 421 So.2d 104
(Ala. 1982), the Supreme Court granted the taxpayer an exemption from sales and use tax for fuel oil used to power boilers designed to generate steam that was used in part in a pollution control facility. The Court distinguished that amount of oil used primarily for pollution control from that used in the production of rayon fiber; the cost allocated primarily to pollution control was exempt from tax; the production of rayon fiber was not.
The taxpayer contends that Eagerton, as well as Rush v.Department of Revenue, 416 So.2d 1023 (Ala.Civ.App. 1982), clearly establishes its entitlement to the exemption. Eagerton
is cited for the proposition that its hazardous waste management business is a "pollution control facility" and Rush
for the proposition that "hazardous waste" is "pollution," within the meaning of the statute. The taxpayer argues that these definitions should lead us to the conclusion that the statute is unambiguous in its grant of an overall exemption to its business at Emelle. We are satisfied that such conclusion would lead to an enlargement of the exemption not intended by the legislature.
The crux of this case, as in most such cases, turns on the issue of the primary purpose of the property and equipment. We do not believe the statute is clear in this regard with respect to the taxpayer's business.
It is well settled that where the meaning of a statute is not clear on its face, the meaning must be determined by finding the intent of the legislature. Tate v. Teague, 431 So.2d 1222
(Ala. 1983).
Section 40-9-1(20), Code 1975, was enacted into law by the state legislature in 1973. The purpose of the act is set out in its prologue:
 "To amend Section 2 of Title 51 of the Code of Alabama of 1940, as heretofore amended, so as to exempt from ad valorem taxation all devices, identifiable parts of devices, systems or facilities constructed, used or placed in operation primarily for the protection of the public and the public interest through the control, reduction or elimination of air or water pollution." (Emphasis ours.)
Acts of Alabama 1973, Act No. 1167, September 18, 1973, p. 1960.
The overriding policy goal of § 40-9-1(20) is broad but clear: "for the protection of the public and the public interest." We do not believe the legislature in enacting §40-9-1(20) intended to subsidize the construction of hazardous waste dumps through overall exemptions from ad valorem taxation.
The vast majority of this taxpayer's property and equipment is used in hazardous waste management. That is the service which the taxpayer's business provides. As such, it can be distinguished from the ancillary equipment used to clean rain water and filter air — that equipment is not integral to the taxpayer's stated purpose of managing hazardous waste.
It might be true, as the taxpayer contends, that another company engaged in a different business, but with the same equipment to contain, say, solid waste from leaking into a water supply, would get the exemption, whereas the taxpayer here would not. In the case of the taxpayer here, that equipment is integral to and is in fact the very service that the taxpayer purports to provide. It does not represent an unrecoverable cost of the enterprise — as it would to a company which manufactures widgets and is required by law to contain its solid waste; the taxpayer's containment equipment is the very property from which its profits are derived.
Accordingly, the primary purpose of the property is not pollution control within the intended meaning of the statute; rather, it is part and parcel of the taxpayer's business purpose. Far from being constructed primarily for the protection of the public and in the public interest, the taxpayer's hazardous waste facility at Emelle could represent a potential threat to the public interest. In Alabama, hazardous waste is defined as follows:
 "A waste, or combination of wastes, which, because of its quantity, concentration *Page 119 
or physical, chemical or infectious characteristics may:
 "a. Cause, or significantly contribute to, an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or
 "b. Pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported or disposed of or otherwise managed."
Section 22-30-3(5), Code 1975. It has been stated elsewhere that:
 "The legislature did not intend to provide a tax exemption and tax credit for facilities to the extent they create rather than abate pollution."
Weyerhaeuser, supra, 545 P.2d at 13. In its judgment, the trial court in this case stated:
 "If hazardous waste is not properly stored and contained, it can create air and water pollution, but hazardous waste is not in and of itself 'air and water pollution.' "
We do not in this case hold that hazardous waste is not in and of itself "air and water pollution." We do hold, however, that the taxpayer's hazardous waste facility at Emelle was not constructed primarily for the purpose of air and water pollution control within the intended meaning of the statute.
In ascertaining legislative intent, we are entitled to consider conditions which may arise under provisions of statutes and to examine the results which will flow from giving language in question a particular meaning over another.Wright v. Turner, 351 So.2d 1 (Ala. 1977). Where there is doubt as to the legislative intent in a statute, weight will be given to the practical effect which a proposed construction will have. League of Women Voters v. Renfro, 292 Ala. 128,290 So.2d 167 (1974). To hold in favor of the taxpayer in this case would be, in effect, to provide an incentive for hazardous waste dumps to locate in Alabama. As we have stated, we do not believe the legislature intended to subsidize the cost of constructing or operating hazardous waste facilities (like the taxpayer's) through property tax exemptions.
It is well settled that taxation is the rule and exemption the exception, Curry v. Reeves, 240 Ala. 14, 195 So. 428
(1940), and that exemptions are to be strictly construed against the exemption and in favor of the right to tax, and that no property is to be exempted unless the intention to exempt such property clearly appears in some statute, BrundidgeMilling Co. v. State, 45 Ala. App. 208, 228 So.2d 475 (1969). One seeking an exemption from taxation assumes the burden to clearly establish the right, and that in all cases of doubt as to legislative intention, the presumption is in favor of the taxing power. Community Action Agency of Huntsville v. State,406 So.2d 890, 894 (Ala. 1981).
At best, in this case, there is doubt that the legislature intended the statute to apply to entire hazardous waste facilities. As such, the law favors taxation; therefore, the taxpayer is now subject to properly assessed ad valorem taxation.
Finally, we find no evidence that the taxpayer's constitutional right to equal protection has been violated in this case.
The judgment is affirmed.
AFFIRMED.
BRADLEY, P.J., and HOLMES, J., concur.