THOMPSON, Judge.
HLH Constructors, Inc. (“HLH”), appeals from the judgment of the trial court finding that its purchase of drain, waste, and ventilation pipe did not qualify for the pollution-control exemption from the sales tax under § 40-23-4(a)(16), Ala.Code 1975.
The record and procedural history of this case reveal the following facts. HLH is a plumbing contractor. During the relevant time period, January 1997 through December 1999, HLH entered into contracts with customers to install plumbing systems in condominiums and commercial buildings in Baldwin County. HLH purchased and used pipe made of polyvinyl chloride (“PVC”), copper pipe and fittings, and cast-iron pipe to complete the contracts. All of the pipes, whether made of PVC, copper, or cast iron, were marked “DWV” for “drain, waste, and ventilation” and will hereinafter be referred to collectively throughout this opinion as “DWV pipe.” After installation, DWV pipe carries sewage and wastewater from toilets, washing machines, and other appliances inside buildings to municipal or public sewage systems outside of the buildings. HLH paid sales taxes on DWV pipe when it purchased the pipe.[1] Thereafter, HLH petitioned the State Department of Revenue (“the Department”) for a refund of State and Baldwin County sales taxes it had paid on DWV pipe it had purchased during the period January 1997 through December 1999. The Department denied HLH’s petitions for a refund. HLH timely appealed to the Department’s Administrative Law Division pursuant to § 40-2A-7(c)(5)a., Ala.Code 1975.
After a hearing before the Department’s Administrative Law Division, the administrative law judge entered an order on August 15, 2001, upholding the Department’s denial of HLH’s petitions for a refund. In its order, the administrative law judge determined that HLH’s purchase of the DWV pipe did not qualify for the pollution-control exemption from the sales tax under § 40-23-4(a)(16).
HLH timely appealed to the Circuit Court of Baldwin County (“the trial court”) pursuant to § 40-2A-8(g), Ala.Code 1975. The case was tried de novo before the trial court on April 16, 2002. See § 40-2A-8(g), *683 Ala.Code 1975. At the April 16, 2002, hearing, the trial court received ore tenus testimony and documentary evidence.
Over a year later, on June 30, 2003, the trial court entered a judgment, finding that HLH’s purchase of the DWV pipe did not qualify for the pollution-control exemption from the sales tax under § 40-23-4(a)(16). . In its judgment, the trial court found, in pertinent part:
“1. [HLH] appealed from a denial of its petition for a refund of sales taxes for January 1997 through December 1999 on drain, waste and ventilation pipe it purchased to fulfill its contracts to install plumbing systems inside commercial buildings. The exemption is claimed under section 40-23^1(a)(16j, Code of Alabama, 1975.
“2. This appears to be a case of first impression. While the pipe in question, undeniably after installation, carries waste and wastewater, it is acquired primarily from [HLH’s] perspective to further the purposes of its plumbing operations.
“3. The Court is of the opinion that the Legislature never intended to exempt from taxation inside plumbing pipe when it enacted [§ ] 40-23-4(a)(16). Therefore the appeal is dismissed and judgment is entered in favor of [the Department].”
HLH timely appealed. HLH contends on appeal that the trial court erred in determining that its purchase of the DAW pipe did not qualify for the pollution-control exemption from the sales tax under § 40 — 23—4(a)(16).
At the outset, we note the standard of review. The relevant facts are essentially undisputed, except for facts relating to the taxation of DAW pipe located outside of the buildings in which HLH installed the DAW pipe inside the buildings, discussed infra.
“AVhen ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J & M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala.1999); Gaston v. Ames, 514 So.2d 877 (Ala.1987). AVhen the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court ‘will assume that the trial judge made those findings necessary to support the judgment.’ Transamerica Commercial Fin. Corp. v. AmSouth Bank, 608 So.2d 375, 378 (Ala.1992). Moreover, ‘under the ore tenus rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.’ Transamerica, 608 So.2d at 378. However, when the trial court improperly applies the law to facts, no presumption of correctness exists as to the trial court’s judgment. Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala.1996); Marvin’s, Inc. v. Robertson, 608 So.2d 391 (Ala.1992); Gaston, 514 So.2d at 878; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala.1985); League v. McDonald, 355 So.2d 695 (Ala.1978). ‘Questions of law are not subject to the ore tenus standard of review.’ Reed v. Board of Trustees for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala.2000). A trial court’s conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 576, 577 (Ala.1993). This court reviews the application of law to facts de novo. Allstate, 675 So.2d at 379 (‘[AV]here the facts before the trial court are essentially undisputed and the controversy in *684 volves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.’).”
City of Prattville v. Post, 831 So.2d 622, 627-28 (Ala.Civ.App.2002).
 This is a case of statutory interpretation.
“In construing statutes granting exemption from taxation, the Supreme Court has expressed the rule as follows: ‘... The “universal rule of construction is that exemptions from taxation, whether statutory or constitutional, are to be strictly construed, against the exemption and in favor of the right to tax, and that no person or property is to be exempted unless the intention to exempt such person or property clearly appears in some statute or constitutional provision.” ’
“It has long been the rule in this state that one seeking an exemption from taxation assumes the burden to clearly establish the right. In all cases of doubt as to legislative intention, the presumption is in favor of the taxing power.”
Brundidge Milling Co. v. State, 45 Ala. App. 208, 210, 228 So.2d 475, 477 (Civ.App.1969) (citations omitted). .
Section 40-23^4(a)(16) provides that the sale of certain enumerated property is ex-* empt from the sales tax. The exemption applies to:
“The gross proceeds from the sale of all devices of facilities, and all identifiable components thereof, or materials for use therein, acquired primarily for the control, reduction, or elimination of air or water pollution and the gross proceeds from the sale of all identifiable components of or materials used.or intended for use in structures built primarily for the control, reduction, or elimination of air and water pollution.”
The pollution-control exemption from the sales tax was enacted in 1973. Act No. 1169, Ala. Acts 1973, p. 1966.[2] At the same time, virtually identical exemptions were enacted to provide for a pollution-control exemption from the use tax and the ad valorem tax. Act No. 1171, Ala. Acts 1973, p. 1976 (use tax), and Act No. 1167, Ala. Acts 1973, p. 1960 (ad valorem tax).[3] Those exemptions are codified at § 40-23-62(18), Ala.Code 1975 (use tax), and § 40-9-1(20), Ala.Code 1975 (ad valorem tax).[4] *685 Therefore, cases interpreting those statutes are instructive in interpreting § 40-23-4(a)(16).
In support of its contention on appeal, HLH argues that its purchase of the DWV pipe qualifies for the pollution-control exemption from the sales tax under the clear, express language of § 40-23-4(a)(16); that the DWV pipe is an identifiable component of a facility acquired primarily for pollution-control purposes within the meaning of the statute; and that the DWV pipe was installed primarily for the control, reduction, or elimination of air and water pollutants. HLH further argues that the proper test for determining whether its purchase of the DWV pipe qualifies for the exemption is the “end use” of the DWV pipe and that the “end use” of the DWV pipe it purchased is for pollution-control purposes within the meaning of § 40-23^(a)(16).
HLH cites Rush v. Department of Revenue of Alabama, 416 So.2d 1023 (Ala.Civ. App.1982), for the general proposition that where the language of a statute is clear and unambiguous, it must be construed and applied as written. In Rush v. Department of Revenue, this court, after concluding that the word “pollution” within the phrase “structures built primarily for the control, reduction or elimination of air or water pollution” in § 40-23-4(a)(16) and in § 40-23-62(18) was unambiguous and therefore must be given its plain and ordinary meaning, defined “pollution” as meaning:
“The term ‘pollute’ is defined as ‘to make physically impure or unclean.’ Webster’s Seventh New Collegiate Dictionary (1976). Thus, pollution would include any impurity.
[[Image here]]
“The meaning of the word ‘pollution’ as used in the Alabama statutes is not limited just to industrial or man-made waste, it includes any impurity.”
Rush v. Department of Revenue, 416 So.2d at 1025.[5]
In Rush, this court held, based on the foregoing definition of pollution, that the exemption under § 40-23^4(a)(16) was not limited to facilities removing industrial pollutants or impurities from water before returning the water to the environment, but that the exemption applied to facilities designed to eliminate all types of impurities from water in order to make it potable. 416 So.2d at 1025.[6] Citing Rush, HLH argues that the trial court’s judgment arbitrarily limits the pollution-control exemption under § 40-23-4(a)(16) to the DWV pipe located outside of the buildings in which it installed the DWV pipe inside the buildings, even though, HLH argues, *686 the statute makes no distinction between DWV pipe located inside buildings, outside buildings, or in the municipal sewer lines. HLH claims that the Department has a longstanding practice of applying the exemption to DWV pipe located outside of such buildings but that there is no language in the statute to differentiate between DWV pipe located inside or outside of the buildings. Although the vice president in charge of operations of HLH testified that the Department granted the exemption for DWV pipe located outside of the buildings in which it installed DWV pipe inside the buildings, the auditor from the Department testified that the Department taxed HLH on its purchase of the DWV pipe installed in the buildings as well as the DWV pipe used to connect the DWV pipe located inside the buildings to the municipal sewer lines.[7] “The trial court, as the finder of fact, is required to resolve conflicts in the evidence.” Eth-ridge v. Wright, 688 So.2d 818, 820 (Ala. Civ.App.1996). Accordingly, the record contains evidence from which the trial court could have concluded that the Department taxed HLH on the DWV pipe installed in the buildings and on the DWV pipe used to connect the DWV pipe located inside the buildings to the municipal sewer lines.
HLH further argues that the Department does not tax DWV pipe used in the municipal sewer lines and that it is not reasonable to differentiate between DWV pipe used in the municipal sewer lines and DWV pipe that connects to the municipal sewer lines from privately owned property. Although the auditor’s testimony was somewhat unclear as to the reason that the Department exempted DWV pipe used in municipal sewer lines from the sales tax,[8] the sale of DAW pipe to a municipality is exempt from the sales tax under § 40-23-4(a)(ll), Ala.Code 1975 (providing that “[t]he gross proceeds of sales of tangible personal property to the State of Alabama, to the counties within the state and to incorporated municipalities of the State of Alabama” are exempt from the sales tax). Trial judges are presumed to know the taw and to have followed it in making their decisions. Ex parte Slaton, 680 So.2d 909 (Ala.1996). Additionally, DAW pipe used in municipal sewer lines arguably is a part of a municipal water treatment system because those DAW pipes belong to the municipality.
Next, HLH cites Eagerton v. Courtaulds North America, Inc., 421 So.2d 104 (Ala.1982), and Chemical Waste Management, Inc. v. State, 512 So.2d 115 (Ala.Civ.App.1987), and argues that the “end use” of the DAW pipe should determine whether HLH’s purchase of that pipe qualifies for the pollution-control exemption from the sales tax under § 40-23-4(a)(16). HLH argues that the “end use” of the DAW pipe is for pollution-control purposes within the meaning of § 40-23^4(a)(16) and that HLH’s profit motive in installing the DAW pipe is irrelevant.[9]
*687 "(8) To qualify for the pollution control exemption the primary purpose for acquiring tangible personal property purchased, stored, used, or consumed shall be the control, reduction, or elimination of air or water pollution. Property acquired for the primary purpose of controlling, reducing, or eliminating air or water pollution, qualifies for the exemption even though a secondary or incidental purpose may be its use in the production of goods or services. Property which is acquired primarily for the production of goods or services and is integral to a profit-motivated business purpose or activity does not qualify for the pollution control exemption even when the property controls, reduces, or eliminates air or water pollution. (Chemical Waste Management, Inc. v. State, 512 So.2d 115 (Ala.Civ.App.1987)).”
In Courtaulds North America, our Supreme Court, in construing § 40-23-4(a)(16) and § 40-23-62(18), stated:
“Close analysis of §§ 40-23-4[ (a)](16) and 40-23-62(18) evidences the qualifications for the stated exemptions. First, it must be a device or facility acquired primarily for pollution control purposes. Or second, it must be an identifiable component of a device or facility acquired primarily for pollution control purposes. Or third, it must be a material for use in a device or facility acquired primarily for pollution control purposes.
“Code 1975, § ll-54-88(e)(2), defines ‘pollution control facility’ as follows:
“ ‘Any land, building, structure, machinery or equipment having to do with or designed for or the end purpose of which is the control, reduction, abatement or prevention of air, noise, water or general environmental pollution, including, but not limited to, any air pollution control facility, noise abatement or reduction facility, water management facility, water purification facility, waste water collecting system, waste water treatment works or solid waste disposal facility.’ ”
Courtaulds North America, 421 So.2d at 107-08.
In Chemical Waste Management, this court looked to the legislative intent in construing the word “primarily” within the phrase “primarily for the control, reduction or elimination of air or water pollution” in § 40-9-1(20), which provides a pollution-control exemption to ad valorem taxation, see 512 So.2d at 116-18; as noted earlier, the pertinent language of § 40-9-1(20) is virtually identical to the pertinent language of § 40-23-(a)(16). In Chemical Waste Management, this court held that a hazardous-waste facility was not constructed primarily for the purpose of air- and water-pollution control within the intended meaning of the statutory exemption from ad valorem taxation for pollution-control facilities. 512 So.2d at 118-19. In so holding, this court reasoned, in part, that “the primary purpose of the property is not pollution control within the intended meaning of the statute; rather, it is part and parcel of the taxpayer’s business purpose.” Id. at 118. Thus, the court in Chemical Waste Management made a distinction between taxpayers who acquired property as part and parcel of their business purpose and those who acquired property ancillary to their business purpose. id.[10]
The dispositive issue in the present case is whether HLH acquired the DWV pipe *688 “primarily for the control, reduction, or elimination of air or water pollution” within the meaning of § 40-23-4(a)(16).
This court, in Chemical Waste Management, included an extensive discussion regarding the definition of “primarily” as it is used in the phrase “primarily for the control, reduction or elimination of air or water pollution”:
“By far the greatest source of difficulty for courts which have construed statutes similar to the one in question has been in construing the word ‘primarily’ in the phrase ‘acquired or constructed primarily for the control, reduction or elimination of air or water pollution.’ A number of courts have attempted to distinguish the end-use of the property in question as the test of whether the tax exemption should apply. If the property is determined to have a substantial function in the production of products or services, the exemption does not apply; if the end-use of the property is determined to be primarily for pollution control, which is incidental to the manufacturing process or service which that business is engaged in, the exemption does apply. See, Annot., 65 A.L.R.3d 434 (1975).
“The problem becomes more complicated when the property both controls pollution and contributes to the production of products or services. In these cases, courts have tried a variety of approaches, including giving partial exemption to a single facility, Weyerhaeu-ser Co. v. State Department of Ecology, 86 Wash.2d 310, 545 P.2d 5 (1976), or exempting only that property used exclusively for pollution control. In the latter situation, property used primarily for pollution control which also provided incidental benefits to the production process was not given the exemption; the property used exclusively for pollution control was given the exemption. Sun Oil Co. v. Lindley, 56 Ohio St.2d 313, 383 N.E.2d 908 ([1978]).
“Thus, courts have attempted to distinguish such property and equipment as primarily directed either to pollution control or to the stated business purpose of the' enterprise itself. As has been indicated, this is not always an easy distinction to make because there is frequently an overlap of pollution control with the principal business function. Some states have responded legislatively to this problem through regulations which define ‘facility’ as that which is not necessary to the manufacturing of products or the rendering -of services. The result follows that the exemption is given only to the extent of the cost attributed to pollution control which is necessitated by the manufacturing of products or the rendering of services. Weyerhaeuser, supra, at 10.
“In the case at bar, the issue of how to construe the word ‘primarily’ with respect to the taxpayer becomes even more acute. The taxpayer argues that its hazardous waste management business is entitled to complete exemption on the ground that it is in the business of pollution control. The taxpayer argues for a complete merger of the ‘business’ with the ‘pollution control’ function of its physical plant.
“The state’s response to the ‘complete merger’ theory is that the primary purpose of the taxpayer’s facility is not pollution- control but profit. The taxpayer’s answer is that industries do not install pollution control facilities through any altruistic desire to maintain clean air and water but because it is necessary to comply with state and federal laws if they are to continue to operate and, consequently, to make a profit.
*689 “This emphasizes the principal reason for the legislature’s enactment of the tax exemption which is to ease the new and sometimes high cost of the addition of pollution control property and equipment to existing businesses, as well as to businesses which will be started after passage of pollution control legislation. The goal of the exemption is to encourage all businesses to control pollution and to assist them in their compliance with mandatory environmental regulations. See generally, Reed, Incentives for Pollution Abatement, 12 Ariz. L.Rev. 511 (1970).
[[Image here]]
“The overriding policy goal of § 40-9-1(20) is broad but clear: ‘for the protection of the public and the public interest.’ [(Quoting the preamble to Act No. 1167, Ala. Acts 1973, which is now codified at § 40-9-1, AJa.Code 1975.)] We do not believe the legislature in enacting § 40-9-1(20) intended to subsidize the construction of hazardous waste dumps through overall exemptions from ad va-lorem taxation.
“The vast majority of this taxpayer’s property and equipment is used in hazardous waste management. That is the service which the taxpayer’s business provides. As such, it can be distinguished from the ancillary equipment used to clean rain water and filter air— that equipment is not integral to the taxpayer’s stated purpose of managing hazardous waste.
“It might be true, as the taxpayer contends, that another company engaged in a different business, but with the same equipment to contain, say, solid waste from leaking into a water supply, would get the exemption, whereas the taxpayer here would not. In the case of the taxpayer here, that equipment is integral to and is in fact the very service that the taxpayer purports to provide. It does not represent an unrecoverable cost of the enterprise — as it would to a company which manufactures widgets and is required by law to contain its solid waste; the taxpayer’s containment equipment is the very property from which its profits are derived.
“Accordingly, the primary purpose of the property is not pollution control within the intended meaning of the statute; rather, it is part and parcel of the taxpayer’s business purpose. Far from being constructed primarily for the protection of the public and in the public interest, the taxpayer’s hazardous waste facility at Emelle could represent a potential threat to the public interest.”
Chemical Waste Management, 512 So.2d at 116-18.
Similarly, in this case, the primary purpose of HLH’s purchase of the DWV pipe was not pollution control; rather, the primary purpose of HLH’s purchase of the DWV pipe was to use it to complete its contracts with its customers — i.e., it was “part and parcel of the taxpayer’s business purpose.” Chemical Waste Management, 512 So.2d at 118. We agree with the trial court that although the DWV pipe, “undeniably after installation, carries waste and wastewater, it [was] acquired primarily from [HLH’s] perspective to further the purpose of its plumbing operations” and was not used primarily for pollution-control purposes within the meaning, of § 40-23-4(a)(16).
Even if this court were to hold that HLH’s purchase of the DWV pipe would qualify for the pollution-control exemption if the DWV pipe were used for pollution-control purposes by the building- owners, we conclude, based on the reasoning below, that the DWV pipe is not used primarily for pollution-control purposes within the meaning of the § 40-23-4(a)(16). *690 The DWV pipe located inside the buildings merely transports the sewage and waste-water from privately owned property to the municipal sewer lines that transport the sewage and wastewater to the municipal-sewage-treatment plant; the DWV pipe is not a part of the municipal-sewage-treatment system. Accordingly, the DWV pipe is not an identifiable component of a facility acquired primarily for pollution-control purposes within the meaning of § 40-23-4(a)(16), nor was it installed primarily for the control, reduction, or elimination of air and water pollutants within the meaning of the statute. We agree with the trial court that the Legislature did not intend to exempt HLH’s purchase of the DWV pipe at issue when it enacted the pollution-control exemption from the sales tax under § 40 — 23—4(a) (16).
Further,
“[i]n ascertaining legislative intent, we are entitled to consider conditions which may arise under provisions of statutes and to examine the results which will flow from giving language in question a particular meaning over another. Wright v. Turner, 351 So.2d 1 (Ala.1977). Where there is doubt as to the legislative intent in a statute, weight will be given to the practical effect which a proposed construction will have. League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974).”
512 So.2d at 119. To hold in favor of HLH in this case would, in effect, exempt a plumbing contractor’s purchase of all pipes that, after installation, transport sewage and wastewater from privately owned property to municipal sewer lines or a municipal wastewater-treatment facility. We conclude that such a holding would lead to an enlargement of the exemption not intended by the Legislature when it enacted § 40-23-4(a)(16).
Based upon the well-settled principles that taxation is the rule and exemption the exception, Curry v. Reeves, 240 Ala. 14, 195 So. 428 (1940); that exemptions are to be strictly construed against the exemption and in favor of the right to tax and that no property is to be exempted unless the intention to exempt the property clearly appears in some statute, Brun-didge, supra; that one seeking an exemption from taxation assumes the burden to clearly establish the right to the exemption and that, in all cases of doubt as to legislative intention, the presumption is in favor of the taxing power, Community Action Agency of Huntsville v. State, 406 So.2d 890, 894 (Ala.1981), we conclude that HLH properly paid State and Baldwin County sales taxes when it purchased the DWV pipe at issue in the present case. Accordingly, the judgment of the trial court upholding the Department’s denial of HLH’s petitions for a refund is due to be affirmed.
AFFIRMED.
YATES, P.J., and PITTMAN, J., concur.
MURDOCK, J., concurs in the result, with writing, which CRAWLEY, J., joins.

. Pursuant to § 40-23-l(a)(10), Ala.Code 1975, a contractor owes sales tax when it purchases materials from a vendor for subsequent use in completing a contract for a customer. Section 40-23-1 (a)(10) provides that the "[s]ales of building materials to contractors, builders, or landowners for resale or use in the form of real estate are retail sales in whatever quantity sold.”

.The purpose of the act is set out in its preamble:
"To amend Section 33 of Act No. 100 enacted at the 1959 Second Special Session of the Legislature of Alabama, as heretofore amended, so as to exempt from the provisions of said Act, and from the computation of the amount of sales tax levied, assessed or payable thereunder, the gross proceeds from the sale of all devices, identifiable parts of devices, systems or facilities used or placed in operation in the State of Alabama, or intended for use or operation in the State of Alabama, primarily for the protection of the public and the public interest through the control, reduction or elimination of air or water pollution, and the gross proceeds from the sale of all materials used in the State of Alabama, or intended for use in the State of Alabama, primarily for the protection of the public and the public interest through the control, reduction or elimination of air or water pollution.”

. The preambles to those acts are virtually identical to the preamble to Act No. 1169, Ala. Acts 1973.

. Section 40-23-62(18) provides that the storage, use, or other consumption in this state of certain enumerated property is exempted from the use tax. The exemption applies to
"[t]he storage, use or consumption of all devices or facilities, and all identifiable components thereof or materials for use therein, used or placed in operation primarily for the control, reduction or elimination of air or water pollution, and the storage, use or consumption of all identifiable components of or materials used or intended for use in structures built primarily for the control, reduction or elimination of air or water pollution.”
*685 Section 40-9-1(20) provides that certain enumerated property is exempted from ad valorem taxation. The exemption applies to
"[a]ll devices, facilities or structures, and all identifiable components thereof or materials for use therein, acquired or constructed primarily for the control, reduction or elimination of air or water pollution.”

. In the present case, whether wastewater and sewage are considered "pollution” within the meaning of § 40-23-4(a)(16) was not at issue. Arguably wastewater and sewage are "pollution” within the meaning of § 40-23-4(a)(16), and we do not hold that sewage and wastewater are not in and of themselves "pollution” within the meaning of § 40-23-4(a)(16).

. In Rush, this court held that "a general contractor who constructed two plants for the treatment of water to be placed in municipal water systems” was entitled to the pollution-control exemption from the sales tax under § 40-23-4(a)(16). 416 So.2d at 1024. At issue in Rush was whether the two plants were pollution-control facilities within the meaning of § 40-23-4(a)(16). 416 So.2d at 1025-26. Whether the contractor was entitled to the exemption was not an issue in that case.

.The auditor testified it was her understanding that the exemption was denied “from the city lines or the public sewer lines back into the building and throughout the buildings. The plumbing throughout the building that went all the way up to and connected to the city lines.” The auditor responded affirmatively when asked by counsel for the Department: "Does the Department have a longstanding practice to start the exemption of (sic) the city sewer lines?”

. During extensive cross-examination regarding the matter, the auditor answered "yes” to the question: "So your Department does recognize the sewer lines in the cities as being part of the facilities, pollution control facilities?”

. The Department denied HLH the sales-tax pollution-control exemption for its purchase of the DWV pipe based, in part, on the fact that HLH was in the business of installing *687 pipes for a profit. In doing so, the Department relied on Ala. Admin. Code, Rule 810-6-3-46(8), adopted by the Department pursuant to the Administrative Procedure Act, § 41-22-1 et seq., Ala.Code 1975; that rule provides:

. In Chemical Waste Management, the taxpayer who was claiming the pollution-control exemption was also the owner of the property in question; moreover, in Chemical Waste Management, this court did not discuss Rush v. Department of Revenue of Alabama, 416 So.2d 1023 (Ala.Civ.App.1982).